to the table, in front of the three operators, racing sheets relating to the races upon the New York, Louisville, and St. Louis tracks; that the officers who made the arrest acted in good faith and in performance of what they believed to be their duty as officials.

The injunction order was granted prior to the decision of the Court of Appeals in Delaney v. Flood, 183 N. Y. 323, 76 N. E. 209, and we are asked to reverse the order upon the authority of that decision, and upon the theory that a court of equity has no jurisdiction to issue an injunction order against members of the police force. I am unwilling to subscribe to that doctrine, for the reasons assigned in the opinion in Burns v. McAdoo et al. (decided herewith) 99 N. Y. Supp. 51, and I believe that such a rule would be against public policy and inimical to the liberties and rights of the people guarantied by the Constitution. In the case at bar the plaintiff does not very satisfactorily show the legitimacy of his business, and the facts presented by the defendants are sufficient to show that they had probable cause to believe that he was conducting a poolroom, which is a felony. I am of opinion therefore that the injunction order was improperly granted, and should be vacated.

It follows that the order should be reversed, with $10 costs and disbursements, and motion denied, with $10 costs. All concur; INGRAHAM and CLARKE, JJ., in result.

---

## In re PILSBURY'S WILL.

(Supreme Court, Appellate Division, Third Department. May 2, 1906.)

1. WILLS—PROBATE—VALIDITY.
Under Code Civ. Proc. § 2624, providing that, if a party expressly puts in issue before the surrogate the validity, construction, or effect of any disposition of personal property by a will, he must determine the question on rendering the decree, unless he refuses probate by reason of failure to prove execution of the will or the testator's capacity or freedom from restraint, as required by section 2623, on proof of these matters a will is to be admitted to probate without regard to the construction or validity of its provisions, which is then to be determined.

2. PERPETUITIES—EXECUTION OF POWER BY WILL.
Under Laws 1897, p. 507, c. 417, § 2 (Gen. Laws, p. 3900, c. 47) providing that the absolute ownership of personal property shall not be suspended for more than two lives in being, and that in other respects limitations of future and contingent interests in personalty are subject to the rules relating to real property, and Laws 1896, p. 583, c. 547, § 158 (Gen. Laws, p. 3824, c. 46), providing that the period during which alienation may be suspended by an instrument in execution of a power must not be computed from the date of the instrument, but from the creation of the power, a provision of a will in execution of a power, suspending the ownership of personalty for the life of a person not in being at the creation of the power, is void.

3. WILLS—REVOCATION—SUBSEQUENT WILLS.
Where a subsequent will contains no express revocation of a prior will, and certain provisions of the subsequent will are invalid, the prior will is not revoked, but both must be admitted to probate and given effect so far as their valid provisions are consistent.

[Ed. Note.—For cases in point, see vol. 49, Cent. Dig. Wills, § 456.]

**4. SAME—CONSTRUCTION—TRUST DURING MINORITY.**

Where a will in execution of a power leaves personalty in trust for a daughter of the testator during her minority, she having been born after the creation of the power, and gives her the principal on reaching majority, and she reaches majority before his death, the provision relating to the trust is inoperative, and the principal vests immediately in her.

Appeal from Surrogate's Court, Albany County.

In the matter of the application for the admission to probate of certain writings as the last will and testament of Sherman Dexter Pilsbury. From a decree granting probate, Edwin M. Pilsbury and others appeal.    Affirmed.

The following is the opinion of the surrogate:

Sherman Dexter Pilsbury died at the city of Albany, N. Y., on the 11th day of June, 1904, being at the time of his death a resident of the county of Albany.  He left, him surviving, his widow, Lena Pilsbury, to whom he was married the day preceding his death, and four children, Edwin Pilsbury, Clarence Pilsbury, Mary E. Pilsbury, and Lillian E. Pilsbury, all residing in the city of New York.  The children above named were born of the marriage of the testator and Mrs. Maria A. C. Pilsbury, which occurred in the year 1860.  At the time of his death the testator was not seised of any real property, and of personal property of the value only of about $200.  The testator was the son of Amos Pilsbury, who died at the city of Albany, N. Y., in the month of July, 1873, being at that time á resident of the county of Albany, and leaving a last will and testament, which was dated January 28, 1873, and was admitted to probate in this court on the 5th day of August, 1873, as a will relating to both real and personal estate.  The property passing by the will of Amos Pilsbury was of the value of about $57,000.

By the provisions of the will of said Amos Pilsbury, after making certain specific bequests, he devised and bequeathed the residuum of his estate, both real and personal, to Chauncey P. Williams, William A. Young, and Abraham V. De Witt, of the city of Albany, in trust for the uses and purposes therein particularly set forth, directing said trustees, out of the funds so bequeathed and devised to them as aforesaid, to set apart the sum of $25,000 in United States 6 per cent. bonds, and to pay over the income thereof to his widow during her lifetime, and upon her death to divide said principal sum into two equal parts, applying the income of one-half thereof to the use of his son Sherman Dexter Pilsbury during his lifetime, and upon his death to pay the principal of the same, together with any accrued interest, to the lawful issue of said testator him surviving.

The seventh item of said will reads as follows: "Seventh. The said trustees shall also set apart and hold the sum of ten thousand dollars in United States six per cent. bonds, or such other securities as I may leave, upon the following trust, namely, to receive the income and interest thereof and apply the said income and interest to the use of my son Sherman Dexter Pilsbury during his natural life and upon his death to pay over the principal sum last named, with any unpaid interest thereon, to the lawful issue of the said Sherman Dexter Pilsbury, him surviving, unless he shall otherwise appoint in an instrument to be by him executed in the nature of a last will and testament, to be executed, published and proved in the same manner as a last will and testament, and said Sherman Dexter Pilsbury is hereby empowered to make such appointment by such instrument and thereby make such disposition of said last principal sum as he may elect."

During the month of December, 1874, the testator and his wife separated, and Mrs. Pilsbury and her four children, who are the contestants in this proceeding, went to the city of New York.  Mrs. Pilsbury died at the city of New York a short time preceding the death of the testator.  After the departure of Mrs. Pilsbury and her children to New York, the testator commenced living with a woman by the name of Agnes Lane.  They sustained towards each other the apparent relations of husband and wife for the period of about 23 years.  On the 29th day of April, 1877, Agnes Lane gave birth to a child, who is known by the name of Jessica Irene Pilsbury, and whose

father was the testator herein. For some years preceding his death, Mr. Pilsbury lived on terms of intimacy with one Lena Malson, to whom he was married on the day preceding his death.

There have been presented for probate, two instruments in writing, purporting to have been executed by Sherman Dexter Pilsbury in pursuance of the power of appointment contained in the will of his father, Amos Pilsbury, with reference to the bequest of $10,000, the use of which he had during his lifetime. Each of said instruments purports to be his last will and testament; one bearing date the 14th day of June, 1887, and the other the 8th day of May, 1897. In addition thereto, there have been offered for probate two codicils; one bearing date the 18th day of August, 1903, and the other the 13th day of May, 1904. For the sake of convenience, in referring to these instruments, they will be designated as the will of 1887 and the will of 1897.

By the will of 1887, after reciting the power of appointment, and his purpose to execute the power, he bequeathed the personal property, with reference to which he had the power of appointment, to Emily H. P. Reese and Abraham V. De Witt, of Albany, in trust, to apply the income and interest to the use of his daughter Jessie Irene Pilsbury during her minority, and on her attaining the age of 21 years to pay over to her the principal sum of said trust estate, to be held by her absolutely and in fee; and provided that, in the event of her death before attaining the age of 21 years, the principal sum of said trust estate should go to her mother, Agnes Lane. In addition thereto, he devised and bequeathed, by the terms of said will, all the rest and residue of his estate to his daughter Jessie Irene absolutely and as her own. By the provisions of said will he authorized and empowered the trustees, if in their judgment they deemed it advisable, at any time to apply the income and interest of said trust estate to the use of his daughter by paying the same to her mother, to be, by her mother, used and expended for the benefit of the daughter, and provided that the receipt of the mother should be a sufficient acquittance for the trustees and evidence of their proper application of such interest and income. He further provided that when his daughter Jessie attained the age of 16 years, if it became necessary or advisable to use part of the principal of said trust estate for her support and maintenance, that the acting trustees could expend a portion of the principal, not exceeding the sum of $400 in any one year, during the minority of his said daughter, and in addition thereto, further provided as follows: "And inasmuch as it will be best for my said daughter to live with her mother, and it may be necessary that the latter should participate in the use of said income and interest for her support, I direct that this may be done in the discretion of the trustees, and that the mother may share in the use of such income and interest during said daughter's minority, in the trustees' discretion."

By the will of 1897, after reciting the power of appointment contained in his father's will, and declaring his purpose of executing that power, he bequeaths to the trustees therein named one-half of the trust fund, in trust, to apply the income to the use of his daughter Jessie Irene Pilsbury during her life, and on her death to her children, if she should have any; if she left no issue, her surviving, then it was to go to her mother, Agnes Lane Pilsbury. If Jessie Irene died after the death of her mother, the principal of such one-half to go to such persons and in such proportions as she, the said Jessie Irene, should appoint by her last will and testament, and if she left no last will and testament, and left children surviving her, said principal was to go to her children. The other half of the trust fund was given and bequeathed by this will to the same trustees, in trust to receive the income and apply it to the use of said Agnes Lane Pilsbury, during her life, and on her death, if the daughter Jessica Irene survived, the trust to continue as to this one-half of the fund, during the life of the latter, the income to be applied to her use and on her death the principal to go to her children. In case of the daughter's death leaving no descendants, the principal of the whole fund, after the death of the mother and daughter, to go to the testator's brother Louis Dwight Pilsbury.

By the codicil of 1903, he bequeathed his household furniture to Lena Malson, and further directed his trustees to set aside the sum of $1,500 to her credit, to be paid her in monthly installments of $30 each month, with interest, stating

therein: "This I consider a small amount for her services in taking care of me through all my sickness for the many past years."

By the codicil of 1904, he appointed Mr. Martin T, Nachtmann, of the city of Albany, executor of his last will and testament, with all the powers given said executor by said will and provided therein: "Except as aforesaid, I affirm and republish said will and the codicil thereto made by me, August 18th, 1903."

On the 31st day of October, 1904, Mrs. Lena M. Pilsbury, being the Miss Lena Malson referred to in the codicil of 1903, and to whom Mr. Pilsbury was married on the day preceding his death, presented a petition to this court asking to have admitted to probate the will of 1897 and the codicils of 1903 and 1904. On the 28th day of November, 1904, Mrs. Jessie I. P. Foll, being the Jessica Irene Pilsbury mentioned in the wills of 1887 and 1897 of said deceased, presented a petition to this court asking to have admitted to probate, as the last will and testament of said deceased, the will of 1887 and the codicils of 1903 and 1904. To the admission of said papers to probate as the last will and testaments of Sherman Dexter Pilsbury, deceased, and the codicils thereto, the children of said deceased, Edwin Pilsbury, Clarance Pilsbury, Mary E. Pilsbury, and Lillian E. Pilsbury, filed certain specific objections, alleging lack of testamentary capacity on the part of the testator at the time of the execution of these instruments; that their execution was brought about by the exercise of undue influence, and by their objections contest the validity of the disposition of the real and personal estate sought to be disposed of by said instruments.

The validity of the disposition of the personal property sought to be disposed of by these papers having been put in issue, the question affecting their validity must be determined by me in this proceeding, as provided by section 2624 of the Code of Civil Procedure, which reads as follows: "Section 2624. Validity and Construction of Testamentary Provisions. But if a party expressly puts in issue before the surrogate the validity, construction, or effect of any disposition of personal property, contained in the will of a resident of the state, executed within the state, the surrogate must determine the question upon rendering a decree, unless the decree refuses to admit the will to probate, by reason of a failure to prove any of the matters specified in the last section.".

The Court of Appeals, in a very recent decision, decided October 17, 1905, reported in 182 N. Y. 468, 75 N. E. 530, in the matter of the probate of the last will and testament of Jane Davis, deceased, indicated the practice to be pursued with reference thereto, when issue had been raised in regard to the validity of the provisions of a will. Judge Vann, in rendering the opinion of the court, after referring to section 2624, and the proceedings thereunder, stated the same to be as follows: "It follows by reasonable implication from this section that the surrogate had no power to refuse to admit the will to probate, unless there was a failure to prove one or more of the matters specified in section 2623. The statute contemplates that, unless the will is admitted to probate, there is no power to construe it. Probate logically precedes construction, for otherwise there is no will to construe. There is no authority to construe the will for the purpose of defeating probate, although it may be examined to discover its bearing upon questions relating to its execution, the capacity of the testator, and the like. Were the rule otherwise, singular results might follow. If the only disposing clause of a will should devise and bequeath all the property of the testator to a trustee for 100 years, the surrogate could not refuse to admit it to probate because the gift was void under our statutes, although it would be apparent upon the face of the instrument. It would be his duty to admit the will to probate upon due proof of the statutory requirements, and, if asked to construe it, to pass upon the validity of the gift afterwards." The court further stated: "We agree with the learned Appellate Division that the true rule of law is that when a paper, unrevoked, testamentary in character, purporting on its face to devise or bequeath real or personal property, executed according to the formalities of the statute by a person of proper age and qualifications and shown satisfactorily to be of sound mind and not under restraint, is presented to a Surrogate's Court for probate, such court has no authority

upon the question of its admission to probate to inquire whether the pro-visions of the paper are ineffectual to pass title, because the sole beneficiary and executor is dead and the devise or bequest has thereby lapsed, or because the provisions of the instrument are ineffectual to pass title to the person named. Any other rule would lead to confusion and to the introduction of false issues in the probate of wills."

No other objections were filed to the probate of any of said instruments, except that Lena M. Pilsbury, the widow of the deceased, filed written ob-jections to the admission to probate of the paper bearing date June, 1887, on the ground that it was not the last will and testament of said deceased. In the proceedings instituted for the admission to probate of the various papers above referred to, as the last will and testament of Sherman Dexter Pilsbury, deceased, considerable testimony was taken, with the understanding upon stipulation, that the testimony so taken, as far as possible, should be con-sidered as taken in each of these proceedings.

I find, from the testimony, that the two instruments offered for probate as the last will and testament of the deceased, and the codicils thereto, were each executed with all the formalities required by law; that at the time of the execution of each of said instruments the testator had the requisite testa-mentary capacity, and they were not the result of any undue influence exer-cised upon him. The will of 1897, and the codicils of 1903 and 1904, are therefore admitted to probate.

All parties to the proceeding admit that the first clause of the will of 1897 is invalid, on the ground that it suspends the absolute ownership of the property therein bequeathed during the lifetime of Jessie Irene Pilsbury, who was not in existence at the time of the death of Amos Pilsbury. The pro-vision reads as follows: "I appoint and direct that one-half of the said property be held by Abraham V. De Witt of the city of Albany, as trustee, in trust to receive the interest and income thereof and apply the same to the use of my daughter, Jessica Irene Pilsbury, during her natural life and on her death, if she leaves issue surviving her, the principal of such one-half shall go to her issue; if she dies during the lifetime of her mother, Agnes Lane Pilsbury, leaving no issue surviving her, then all the principal of the said one-half shall go to her mother. If she dies after the death of her mother, the principal of such one-half shall go to such persons and in such proportions as she, the said Jessica Irene, shall appoint by her last will and testament, and if she leaves no last will and testament but leaves children surviving her, said principal shall go to her children."

The provision of the statute with reference to the suspension of ownership of personal property is section 2, c. 417, p. 507, of the Laws of 1897, being an act in relation to personal property, constituting chapter 47, p. 3900, of the General Laws, and reads as follows: "Section 2. Suspension of Owner-ship. The absolute ownership of personal property shall not be suspended by any limitation or condition for a longer period than during the continu-ance and until the termination of not more than two lives in being at the date of the instrument containing such limitation; or, if such instrument be a will, for not more than two lives in being at the death of the testator; in other respects limitations of future or contingent interests in personal prop-erty are subject to the rules prescribed in relation to future estates in real property."

The provision, with reference to future estates in real property, is con-tained in section 158, c. 547, p. 583, of the Laws of 1896, entitled "An act relating to Real Property," constituting chapter 46, p. 3824, of the General Laws, and is as follows: "Section 158. Computation of Term of Suspension. The period during which the absolute right of alienation may be suspended by an instrument in execution of a power must be computed not from the date of such instrument, but from the time of the creation of the power."

These provisions of the statute, with reference to the suspension of the power of alienation and the suspension of the absolute ownership of personal property, have been repeatedly construed by the courts of this state. In the case of Fargo v. Squires, 154 N. Y. 250, 48 N. E. 509, the application of the same, with reference to property passing under the exercise of a power of appointment by will, is fully considered. It was there held: "In applying

the statutory rule as to the suspension of the absolute ownership of personal property, the provisions of a will which attempt to execute a power of appointment conferred by will must be tested by reading them into the will which created the power. An attempt, by a will which undertakes to execute a power of appointment conferred by will, to pospone the absolute ownership of personal property covered by the power of appointment, by lives which were not in being at the death of the maker of the will which created the power, violates the statute."

In the case of Mills v. Husson, 140 N. Y. 99, 35 N. E. 422, it was held that the rules governing estates or interests in lands, are, as far as practicable, applied to estates or interests of a like character in personal property.

With reference to lands it is provided that: "The period during which the absolute right of alienation may be suspended, by any instrument in execution of a power, shall be computed, not from the date of such instrument, but from the time of the creation of the power. No estate or interest can be given or limited to any person, by any instrument in execution of a power, which such person would not have been capable of taking under the instrument by which the power was granted."

The validity of the will of Sherman Dexter Pilsbury, in so far as he attempted to execute the power of appointment, must therefore be tested by reading the provisions of his will into the provisions of the will of Amos Pilsbury which created the power. Tested by this rule, Jessie Irene Pilsbury, not being in existence at the time of the death of Amos Pilsbury, any attempt to postpone the absolute ownership of the property during her lifetime would be in violation of the provision of the statute. I therefore hold that the first clause of the will above referred to is invalid, for the reasons above given.

We now come to the validity, construction, and legal effect of the disposition which this will attempted to make of the other half of said principal sum, which attempted disposition is as follows: "I further appoint and direct that the other one-half of the said principal shall be held by the said Abraham V. De Witt as trustee in trust to receive the interest and income thereof and to apply the same to the use of the said Agnes Lane Pilsbury during her life, and on her death the said Abraham V. De Witt, trustee, or his successor or substitute as trustee, shall continue to hold the principal of the said one-half and receive the income and interest thereof and apply the same to the use of the said Jessica Irene Pilsbury during her life and on her death the principal of such one-half shall go to such person or persons as she shall appoint by her last will and testament, and in case she leaves no last will and testament, then such principal shall go to her issue if she leaves any issue surviving her. If the said Jessica Irene shall die during the lifetime of her mother, said Agnes Lane Pilsbury, then, on the death of the said Agnes Lane this one-half of the principal shall go to the issue of the said Jessica Irene, if any such there be then surviving; if there should be no such issue then surviving, such principal shall go to my brother, Louis Dwight Pilsbury, if he be living, and to his issue if he should not then be living." By this provision of the will the principal of the fund so bequeathed was to be held in trust for the lives of Agnes Lane and Jessica Irene Pilsbury; the power of absolute ownership is to be exercised on the death of Jessica; the period of suspension is the lives of Agnes and Jessica, the corpus does not vest until Jessica's death, and Jessica not being in existence at the time of the death of Amos Pilsbury, the absolute ownership of the property so bequeathed is unduly suspended and this provision is invalid.

The will of 1897 contains no provision revoking former wills made by the testator, and it is the contention of Mrs. Foll, formerly Jessica Irene Pilsbury, that the two instruments that have been offered for probate as the last will and testament of the deceased, and the codicils thereto, constitute and comprise the last will and testament of the deceased and are to be construed and read together. It is the contention of the contestants herein that having by the will of 1897, in pursuance of his power of appointment, executed that paper in pursuance thereof, and assuming to make testamentary disposition of the same, and the provisions thereof being inconsistent and repugnant to the provisions of the will of 1887, the execution thereof necessarily re-

voked the former Instrument. The provisions of our statutes, with reference to the revocation of wills, is as follows: "Any will in writing, except in the cases hereinafter mentioned, nor any part thereof, shall be revoked or altered otherwise than by some other will in writing, or some other writing of the testator declaring such revocation or alteration, and executed with the same formalities with which the will itself was required by law to be executed, or unless said will be burnt, torn, canceled, obliterated or destroyed with the intent or for the purpose of revoking the same by the testator himself, or by another person in his presence by his direction and consent, and when so done by another person the direction and consent of the testator and the fact of said injury or destruction shall be proved by at least two witnesses." No words of revocation being found in any of the testamentary papers now before this court, the question of express revocation therefore does not enter into the case. The only question then to be considered is whether by the execution of the second instrument, which I have held to be an invalid execution of the power of appointment, there was an implied revocation of an earlier will.

In Austin v. Oakes, 117 N. Y. 577, 23 N. E. 193, Judge Finch, rendering the opinion of the court, said, "The revocation of an earlier disposition of a will by a latter will or by a codicil on the ground of repugnancy is never anything but a rule of necessity, and operates only so far as is requisite to give the latter provision effect."

In two papers containing different provisions, the one making bequests and devises not contained in the other, then both must be proved and admitted to probate, and both constitute, when read together, the will of the testator, as if all the provisions of both were contained in one instrument. Crossman v. Crossman, 95 N. Y. 149. A will and codicil are construed as parts of the same instrument, and a codicil is no revocation of a will further than it is so expressed. Where the codicil contains dispositions inconsistent with the provisions of the will, the latter will be deemed revoked to the extent of the discordant dispositions, and so far as may be necessary to give effect to the provisions of the codicil. Newcomb v. Webster, 113 N. Y. 191, 21 N. E. 77. The court must give such constructions as will effectuate the general intention of the testator. Tilden v. Green, 130 N. Y. 39, 28 N. E. 880, 14 L. R. A. 33, 27 Am. St. Rep. 487. Schouler on Wills says, at section 407: "Any number of testamentary instruments, executed at different times, may constitute one's last will in legal effect." Several instruments together may be declared by the surrogate to be the final testamentary disposition of a decedent's estate. Matter of Campbell, 170 N. Y. 84, 62 N. E. 1070. Judge Gray, in the latter case, says: "The object of the statute of wills is to effectuate that which is proved to be the last will of a deceased person."

In the case of Austin v. Oakes, 117 N. Y. 577, 23 N. E. 193, above referred to, the remainder of the testator's estate was given to his children and grandchildren in such shares as his wife should by her will appoint. By her will she duly exercised the power of appointment. Subsequently one of the appointees died. Then she undertook, by a codicil, to designate which of the appointees should receive the share which the will provided should go to the deceased child. This provision of the codicil was held to be inoperative and void. In that case the court held that, although the appointment sought to be made by the codicil to said will was invalid, and, if valid, would have been repugnant to certain provisions of the prior appointment, still, being invalid, it did not revoke the same. With reference to the position taken upon the argument that a bad appointment operates as a revocation of a good one, the court says: "That proposition strikes us as both unreasonable and illogical. The appellants are required to argue, as they do argue. that the appointment of Mrs. Austin's codicil was absolutely null and void, because it transcended the authority conferred; and not only that, but was so vicious and bad that it dragged down with it the other appointments which did not exceed the power, and yet was good enough and had force enough to revoke and annul, without words of revocation, an appointment complete and lawful and fully within the scope of the power conferred. There is said to be authority for that doctrine, but, if there is, we should hope for the needed courage to dissent from its determination, for it will not bear the scrutiny of common sense, or harmonize with the plainest dictates of justice.

I think a very brief analysis will show that I do not speak too strongly. What, then, is the ground of the alleged revocation? There are no words to that purport, or which declare that intention, and so it rests alone upon an implication born of the alleged repugnancy of the two provisions. But are they necessarily repugnant? They would be if the devise to the Oakes children was good; but are they, if it is bad? Can nothing be repugnant to something and turn that something into nothing?"

In Altrock v. Vandenburgh (Sup.) 25 N. Y. Supp. 851, a similar question was presented for the consideration of the court, Judge Parker, late of the Court of Appeals, rendering the opinion, and in that opinion he quotes largely from the decision in Austin v. Oakes as applicable to the facts there considered, and, as his reasoning seems to be somewhat analogous to the issues raised in this proceeding, I must be pardoned if I quote at length from his opinion. He states the rule as follows: "A will should be so construed as to carry out the testator's intention, unless some positive rule contravenes. A codicil which devises real estate to the three children of testator during the life of each and successively to the survivor or survivors, and, upon the death of all, to their children, is void as suspending the power of alienation for more than two lives in being. A codicil that does not contain an express revocation does not operate to revoke the terms of the will, unless such codicil is itself valid and can be carried into effect. Now, if this attempted devise was valid, it would operate as a revocation of the will in such respect, because inconsistent with it, and expressly intended to take the place of it. But it is not valid, and it would be strange indeed if a wholly inoperative attempted disposition should, nevertheless, have the effect of destroying a prior valid devise, especially when, as in this case, it is apparent that the testator did not wish to die intestate as to his real estate, and that, if he had known that he could not lawfully make the disposition last attempted, he would have been content with the first. No authority has been brought to my notice which seems to require such a holding. On the contrary, the reasoning of Judge Finch, speaking for a unanimous court in Austin's Case, 117 N. Y. 577, 23 N. E. 193, seems to clearly justify the conclusion that a void disposition, although inconsistent and repugnant to a prior one, does not operate to destroy it. A comparison of the main features of the two cases will make clear the applicability of the discussion of the Austin Case to the one under consideration. In that case the testator possessed, and by will legally exercised, the power of appointment. In this one testator could, and by will did, devise his real estate. The testatrix in the Austin Case possessed the power to revoke, by codicil, the appointment made by the will and to make a new and valid appointment therein. The testator, Vandenburgh, also had the power to revoke, by codicil, the devise contained in the will and to make a new devise therein. In Austin's Case the testatrix intended to revoke the appointment as to Charles Austin's share and reappoint as to it. And in this case the testator intended to substitute the devise made by the codicil for that provided by the will. In each case the disposition attempted to be made by the codicil is void and of no effect, and in each case the question is squarely presented whether these void attempted dispositions are nevertheless effective to revoke the dispositions they were intended to replace. In Austin's Case it was held not; Judge Finch saying: 'And thus the conviction is strengthened that Mrs. Austin did, fully and completely and lawfully, execute by her will the appointment authorized by her husband, unless the further objection of the appellant is sound—that her codicil appointing the share of Charles to the Oakes children operated as a revocation of the devise over, although itself null and void. Suppose Mrs. Austin had written out in full the thought which was in her mind when she executed the codicil. She would have said: "I prefer to give the share of Charles to the Oakes children if I can. That is my preference, and I give it to them if I may do so according to law." And then suppose that it should turn out that she could not lawfully make the change. Does it follow, in that event, that she meant to revoke the valid appointment? That preference was wholly subordinate to the execution of her power, and no violence is done to her intention if, that failing, the disposition of her will is suffered to stand; for I deem it beyond a reasonable doubt that, if she had known what we now know, that an appointment to the

daughter's children was not within her authority, she never would have made it, but would have suffered the disposition of her will to remain.' It seems to be clear that the reasoning in the Austin Case is not only applicable, but controlling in this one."

In Page on Wills, the rule is laid down as follows: "Section 268. Revocation by Later Will. No Clause of Express Revocation. If the later will does not contain a clause of express revocation, the question to be considered is whether or not the later will is consistent with the earlier will. If it is consistent, no revocation is effected, and the two wills are to be taken together as one in effect. If the later will is inconsistent with the earlier will, it revokes the earlier will just so far as it is inconsistent with it, and no further, and the absence of a revocation clause does not prevent revocation to this extent. Hence, where there is no revocation clause, if the second instrument fails of effect for any cause, as for invalidity of the disposition made therein, the earlier will is not thereby revoked."

Applying the reasoning of the court in the case of Austin v. Oakes to the issues raised herein, I am unable to see how an invalid exercise of the power of appointment expressed in the will containing no express clause of revocation can operate to revoke a prior valid appointment, if one has been made. In the Austin Case the execution of the codicil containing a provision repugnant to the bequests in the former will, being invalid, was held not to have revoked the same, and that the provision of the former will, to which the codicil was to have been applied, and to which it was repugnant, if valid, had not been revoked. Such being the case, how can a distinction be made between the provisions contained in a codicil and a will? If contained in the codicil and invalid, it cannot destroy or effect a prior valid appointment. How can it have that effect if invalid and contained in the will? I therefore hold that the attempted exercise of the power of appointment by the will of 1897 being invalid, and that will not containing an express provision revoking the former exercise of that power, the prior appointment will prevail, if a valid exercise thereof.

I therefore hold that the two papers offered for probate as the last will and testament of the deceased, and the codicils thereto, be admitted to probate as the last will and testament of the deceased.

In determining this matter, the intention of the testator must be taken into consideration. It is apparent that he did not desire to die intestate. It is apparent that he intended to exercise the power of appointment conferred upon him by the will of his father. It is apparent that he did not desire that his children, who are the contestants herein, should have any of the property, the disposition of which he could control by the exercise of the power of appointment conferred upon him by the will of Amos Pilsbury. It is clear that he desired, as far as possible, to do what he could for the maintenance and support of the unfortunate child born to him by Agnes Lane, and born out of wedlock, and also to compensate the woman, who in the last years of his illness had attended to his wants and nursed and cared for him, and to whom he was married on the day preceding his death. It thus becomes the plain duty of this court to so construe these instruments, if possible, to effectuate the intent of the testator.

The validity of the exercise of the power of appointment contained in the will of 1887, is challenged by the contestants; the provision to which objection is taken reading as follows: "Now, therefore, in order to execute and carry into effect the powers of disposition and appointment so given me, I hereby make the follow—disposition and appointment of and in respect to all the personal property whereof and in respect to which the power of appointment and disposition is given me by the last will and testament of my father: I give and bequeath all such personal property to my mother, Emily H. Pilsbury Reese, and Abraham V. De Witt, of Albany, as trustees, to take and hold the same upon trust to receive the income and interest thereof and to apply such income and interest to the use of my daughter, Jessie Irene Pilsbury, during her minority, and on her attaining the age of twenty-one years to pay over the principal sum of such trust estate to her, said Jessie Irene, to be held by her absolutely and in fee; and in case of her death before she attains the age of twenty-one years I give the principal sum of

such trust estate, with any unused or accumulated interest thereon, to her mother." The testator died on the 15th day of June, 1904. Jessie I. Pilsbury, the daughter of said Sherman Dexter Pilsbury by Agnes Lane, was born on the 29th day of April, 1877. Therefore at the time of the death of her father, she was over 21 years of age. It is the contention of the proponents that Jessie, having reached her majority prior to the death of her father, the provisions of the will creating the trust and providing for the use of the income during her minority had become inoperative, and that, she being entitled to the principal of the estate upon her reaching her majority, the title to the same is now vested in her. The contestants contend that the validity of the provision of the will creating the trust during the minority of Jessie is to be tested as to its legality as it appears in the will unmodified by subsequent events.

The question here involved came up for determination in the matter of Hughes v. Mackin, 16 App. Div. 291, 44 N. Y. Supp. 710. The court there held as follows: "The will of a testator, made at a time when but one of his three children was of full age, after giving to his executors all of his estate in trust until his youngest child, Letitia, should attain the age of 21 years, provided that, upon the happening of that event, his executors or the survivors of them, should sell his real estate and pay over the proceeds as follows: $1,000 to his son Nicholas (the adult child), and the balance to his two minor children, John and Letitia, share and share alike; and in the event of either of the two latter persons dying before the period before named, unmarried and without issue, that then the survivor should take the share of the one so dying. All of the testator's children survived him; the minor two children, John and Letitia, attaining their majority before the testator's death, subsequent to which event John died, unmarried and without issue." Upon these state of facts, the court held: "That the trust estate was created as a mere incident to the testator's main scheme for the final distribution of his estate. Upon the testator's youngest child attaining her majority before the death of the testator, the provision for the trust became inoperative, and the will must be read as though that provision had not been inserted."

It was the clear intent of Pilsbury, by the will of 1887, to provide that the fund of $10,000, with reference to which he exercised the power of appointment, should be paid to his daughter Jessie Irene, and that creation of the trust estate during her minority was a mere incident to that scheme.

In Kalish v. Kalish, 166 N. Y. 368, 59 N. E. 917, the rule is laid down as follows: "When invalid provisions of a will may be eliminated so as to leave intact the parts that are valid, and to preserve the general plan of the testator, such a construction will be adopted as will prevent intestacy, either partial or total, as the case may be. In a will which gives the testator's widow a valid life estate, a subsequent clause providing for the void trust may be expunged without destroying the will as a whole or creating partial intestacy, where it is succeeded by a valid ultimate trust and good remainders in favor of the same legatees for whose benefit the void intermediate trust was created and under which they will take in the same proportions."

To the same effect, in Henderson v. Henderson, 113 N. Y. 1, 20 N. E. 814: "Courts should endeavor, by every reasonable intendment, and by a liberal construction, to sustain a testamentary disposition of property when, in so doing, they can give actual and just effect to the testator's intent, and validate at least the main, if not the true, part of a testamentary scheme which contemplates distinct and severable acts."

A question somewhat similar to the one at issue was presented for consideration in the case of Tallman v. Tallman, 3 Misc. Rep. 465, 23 N. Y. Supp. 734, at the Equity Term of the Superior Court; Judge McAdam writing the opinion for the court. Under the provisions of the will, Mrs. Tallman (his then wife) was to take a life estate, and each of the Coley children a life estate in one-half of the remainder, to be made a fee upon his or her marriage and birth of issue. In the event of the death of one of these children, the share of the child so dying was to go to the survivor, if he or she be married and have issue; if not, upon the death of the survivor unmarried and without issue, the property was to go to the residuary devisees. Mrs. Tallman predeceased her husband, and the court, applying the rule of law

to this state of facts, used the following language: "Assuming, then, that Mrs. Tallman did survive her husband, and there is (it is claimed) no provision for the vesting of the whole estate until after her death and the death of both the grandchildren, the case might have then been brought within the prohibition of the statute and the devise would have been void. Hawley v. James, 16 Wend. 61; Odell v. Youngs, 64 How. Prac. 56; Dana v. Murray, 122 N. Y. 617, 26 N. E. 21. But the will speaks as of the time of the testator's death, and whatever might have been the effect, had Maria E. Tallman, his wife, survived him, matters not, as by her death before him the legacies and devisees to her lapsed and are not to be considered in estimating the terms within which alienation is restrained or the absolute ownership suspended."

I therefore hold that, Jessica Irene Pilsbury having reached the age of 21 years prior to the death of her father, that provision of his will creating the trust during her minority was thereby rendered inoperative, and the title to the bequest vests in her absolutely, subject to the provision made for the widow of the deceased by the codicil of 1903. And I further hold that the two instruments, and the codicils thereto, are to be construed and held as the last will and testament of Sherman Dexter Pilsbury, deceased; that the appointment attempted to be made by the will of 1897 is invalid; that the trust created for the benefit of Jessica in the will of 1887, during her minority, is inoperative, she having reached her majority before the death of her father; that the fund of $10,000, with respect to which the testator had the power of appointment, is vested in Jessica Irene Pilsbury, subject to the setting apart of the fund of $1,500 provided for by the codicil of 1903.

Findings and decree to be prepared accordingly.

Argued before PARKER, P. J., and SMITH, CHESTER, KELLOGG, and COCHRANE, JJ.

J. R. Bowen, for Edwin M. Pilsbury, Lillian E. Pilsbury, Clarence T. Pilsbury, and Mary E. Pilsbury.

Martin T. Nachtmann, for Jessie I. P. Toll.

Abraham V. De Witt, for Agnes Lane and Louis D. Pilsbury.

Edwin Van Wormer, in pro. per.

PER CURIAM. Decree affirmed, without costs to either party, upon the opinion of Fitts, surrogate. All concur, except PARKER, P. J., not voting.

---

## In re KENNEDY'S ESTATE.

(Supreme Court, Appellate Division, Third Department. May 2, 1906.)

TAXATION—TRANSFER TAX—EVIDENCE OF PROPERTY.

Testimony of a witness, who was in litigation with deceased before his death, and with his estate thereafter, that five years before his death deceased showed him a box, stating that it contained $700,000 of securities, which witness did not handle, count up, or estimate, is not such evidence as to authorize the imposition of a transfer tax on the estate based on that amount being subject thereto.

Appeal from Order of Surrogate, Ulster County.

In the matter of the appraisal, under the taxable transfer act, of the estate of David Kennedy, deceased. From a decree of the surrogate fixing a tax of $6,156.15 on the estate, Eliza D. Kennedy and others, as executors of deceased and individually, appeal. Reversed and remitted for reassessment.