In the Matter of the Application of ALBERT SMITH SHELDON for the Proof and Probate of an Alleged Last Will and Testament of GILLAIS A. HUDSON, Deceased. ALBERT SMITH SHELDON and FIDELIA B. RUTHERFORD, Appellants; WILLIEAN S. HUDSON, Respondent.

(Supreme Court, Third Department, November 14, 1913.)

WILL—PROBATE—BURDEN OF PROOF—LOST WILL—PRESUMPTION WHEN WILL CANNOT BE FOUND—EVIDENCE—PLEADINGS IN SURROGATE'S COURT.

> One offering a will for probate is under the burden of proving its existence at the time of a testator's death, or that it was fraudulently destroyed in his lifetime.
>
> Evidence in a proceeding to probate a will examined, and *held*, to sustain the decree of the surrogate that the will, though duly executed, was not in existence at the time of the death of the testator, nor fraudulently destroyed in his lifetime, but had been destroyed by him with intent to revoke it and hence was not entitled to probate.
>
> Pleadings in Surrogate's Court may be oral except when required to be in writing by the surrogate.
>
> Where a petition for leave to intervene upon the probate of a will fully states the position of the petitioner and she is allowed to appear and defend, a refusal of the surrogate to allow her to file an answer *nunc pro tunc* as of the time of the granting of the order of intervention is not erroneous where her rights have been in no way prejudiced.

APPEAL by Albert Smith Sheldon and another from a decree of the Surrogate's Court of the county of Madison, entered in the office of said surrogate on the 23d day of December, 1912, with notice of an intention to bring up for review the findings made by the surrogate.

Hitchcock & Murphy [Charles A. Hitchcock of counsel], for the appellant Sheldon.

. Brown & Woolver [Edwin J. Brown of counsel], for the appellant Rutherford.

David F. Wallace [Carlos J. Coleman of counsel], for the respondent.

LYON, J.—This is an appeal from a decree of the surrogate of Madison county, entered in his office December 23, 1912, adjudging that a will of Gillais A. Hudson, who died in October, 1912, aged about sixty years, was not entitled to probate.

The sole beneficiary of the will as well as the sole executor thereof was the proponent, Albert Smith Sheldon, with whom the testator had been intimately associated. The respondents were Williean S. Hudson, the son and only heir at law of the testator; De Etta Hudson Clark, as temporary administratrix of the estate of the testator, and Fidelia B. Rutherford, an. alleged beneficiary under a former will of the testator, who, pursuant to an order granted upon her application, was allowed to intervene and make herself a party to the proceeding and interpose her defense. Williean S. Hudson filed an answer denying all the material allegations of the petition. Fidelia B. Rutherford filed no answer, but made application to the surrogate at the time of the settlement of the case to be permitted to file an answer *nunc pro tunc* as of the time of the granting of the order of intervention, which application was denied. The surrogate decided that on November 18, 1904, the testator was competent to make a will, and that on that day he duly executed his said last will and testament devising and bequeathing all his estate to said Albert Smith Sheldon, whom he appointed sole executor, and that he thereby revoked all former wills by him made; that said will was not in existence at the time of the death of the testator, nor was it fraudulently destroyed in his lifetime, but that it had been destroyed by him

with intent to revoke it, and that said will was not entitled to probate as the last will and testament of testator. The surrogate thereupon denied probate of the will, and to his decision both the proponent and said Rutherford filed exceptions, and both appealed to this court.

The two questions involved in the appeal are whether the evidence was sufficient to establish the will and that it was in existence at the time of the testator's death or had been fraudulently destroyed in his lifetime. Section 2621 of the Code of Civil Procedure provides that a lost or destroyed will can be admitted to probate in a Surrogate's Court only where a judgment establishing the will could be rendered by the Supreme Court as prescribed in section 1865 of the Code of Civil Procedure, which provides that plaintiff is not entitled to judgment establishing a lost or destroyed will unless the will was in existence at the time of the testator's death, or was fraudulently destroyed in his lifetime, and its provisions are clearly and distinctly proved by at least two credible witnesses, a correct copy or draft being equivalent to one witness.

The evidence was sufficient to sustain the finding of the surrogate that the testator executed the alleged will, but the more serious question is whether the evidence was sufficient to establish the existence of the will at the time of the testator's death, or that it had been fraudulently destroyed in his lifetime. One witness, who at one time had tended bar for testator, testified to having seen the will in 1907, and he is the only witness who testified to having seen it during the eight years which expired between the time of its execution and the death of testator. Several witnesses testified to declarations of testator made in the years 1905, 1908, 1909, 1911, and as late as September, 1912, to the effect that the testator was displeased with his son, and said he should leave him none of his property, and that he should leave none of his property to his relatives, but that

proponent was his friend, and that he had made a will leaving him all his property.   One witness, who said he had several times acted as a detective and witness for testator in divorce proceedings, testified that during testator's last illness in October, 1912, and within from six to ten days before his death, the witness, while in an upstairs room, overheard through a register in the floor, a conversation between proponent and testator at the latter's house, in which proponent said to testator: " Where is the will you drew in 1904 in my favor? " to which testator answered, " It is safe." " Safe where? " asked proponent.   " It is locked up in a box in my desk," answered testator.   Assuming that the surrogate was satisfied that this conversation in fact took place, it was still a question of fact what weight it was entitled to in view of the evidence generally and particularly of the testimony of the subscribing witnesses to the will in question that at the time of the execution thereof the testator stated to them he was making his will so he knew his mother would be cared for; the testimony of his sister, Mrs. Clark, that testator told her that he had made a will and that she was provided for, and the testimony of witness Saley that testator had always told him that he was going to take care of him in his will, but that testator had been telling a great many stories.   It appears from the evidence that from 1905 to the time of testator's death Mrs. Harvey resided in his house as his housekeeper, with free access to all parts of the house, and that she had possession of testator's keys from the time he was taken sick until after his death; also that his sister, Mrs. Clark, his brother, his brother-in-law and a nurse were at his house during the week or ten days before his death, yet none of them, with the exception of Mrs. Clark, were called as witnesses or to show that the will was not destroyed by testator or under his direction during his last illness or to facts indicating that it had been fraudulently destroyed,

although it appears that Mrs. Harvey then resided at Utica in an adjoining county, and so far as was shown none of the persons resided beyond the reach of a subpœna.

Concededly testator's son, who alone would profit by intestacy, was not at testator's house during testator's last sickness, and there is not a suggestion in the evidence which would connect the son with the destruction of the will. So far as appears from the evidence the will was never out of testator's possession.

The surrogate, having seen and heard the witnesses, was favorably situated to judge of the weight which should be given to the testimony of each.

The burden of proof to establish the existence of the will at the time of testator's death or that it had been fraudulently destroyed in his lifetime was upon proponent, and we think that the findings of the surrogate were justified by the evidence.

" Proof that a will executed by a deceased person was said by him, a month previous to his death, to be in his possession in a certain desk at his house; that he was then very aged and feeble; that his housekeeper was a daughter having an interest adverse to the will, and that the same could not be found on proper search three days after his death is not sufficient evidence of its existence at the testator's death or of a fraudulent destruction in his lifetime to authorize parol proof of the contents." (Knapp v. Knapp, 10 N. Y. 276.)

" The presumption of law is that a will proved to have had existence and not found at the death of testator, was destroyed *animo revocandi*." (Id. p. 278; Eighmy v. People, 79 N. Y. 546, 559.)

" There is no direct proof that Mrs. Collyer destroyed her will. But the proof that the will was not found after her death is sufficient proof that she destroyed it *animo revocandi*. When a will previously executed cannot be found after the death of the testator, there is a strong presumption that it was

revoked by destruction by the testator, and this presumption stands in the place of positive proof. (Betts v. Johnson, 6 Wend. 173; Knapp v. Knapp, 10 N. Y. 276; Schultz v. Schultz, 35 id. 653; Hatch v. Sigman, 1 Demarest, 519.) He who seeks to establish a lost or destroyed will assumes the burden of overcoming this presumption by adequate proof. It is not sufficient for him to show that persons interested to establish intestacy had an opportunity to destroy the will. He must go further and show, by facts and circumstances, that the will was actually fraudulently destroyed." (Collyer v. Collyer, 110 N. Y. 481, 486.)

" No presumption as to the continued existence of a will and codicil arises from the proof of their execution, so as to establish the existence thereof at the time of the testatrix's death, which is essential under the statute to permit the admission to probate of a lost or destroyed will in a Surrogate's Court; but failure to find such will and codicil after careful and exhaustive search, raises a presumption that the decedent herself destroyed them *animo revocandi.*" (Matter of Kennedy, 167 N. Y. 163.)

The appellant Rutherford contends that the evidence fails to establish the existence of a clause of revocation in the will, but this is immaterial as the will having disposed of all testator's property was inconsistent with the alleged former will, in favor of Mrs. Rutherford, and hence the latter will must be deemed to have evidenced the intention of the testator to revoke the former will. (Clark v. Kingley, 37 Hun, 246; Matter of Pilsbury's Will, 99 N. Y. Supp. 62; affd., 186 N. Y. 545; 40 Cyc. 1175.)

There are no exceptions calling for the reversal, or for a modification of the decree of the surrogate. While the appellant Rutherford has devoted considerable space in her brief to the exception taken by her to the refusal of the surrogate to

allow her upon the settlement of the case to file an answer *nunc pro tunc* as of the date of the order allowing her to intervene, it is to be observed that the matter was at most discretionary with the surrogate and that pleadings in Surrogate's Court may be oral, excepting when required by the surrogate to be in writing. (Code Civ. Proc. § 2533.) No such requirement was made by the surrogate. The petition for leave to intervene fully stated her position, and she was allowed to appear and defend and her rights have been in no way prejudiced either upon the trial or upon this appeal, by such refusal of the surrogate.

The appellant Sheldon complains of the ruling of the surrogate sustaining the objection of contestant Hudson to his testifying in effect that the copy of the will annexed to the petition was a copy of the original will executed by the testator, upon the ground that the witness was disqualified under section 829 of the Code of Civil Procedure. Whether or not the witness was disqualified is not material as the surrogate has found the fact to be as so claimed by proponent; hence the exclusion of the testimony was in no way prejudicial to him.

The decree of the surrogate must be affirmed, with costs to respondents.

Decree unanimously affirmed, with costs.

---

## NOTE ON LOST WILL

The fact must first be proven that decedent had in fact made a will. This cannot be proven by evidence of declaration by decedent, that he had made a will. There must be evidence that a will had been seen by a witness or its existence may be admitted by the party claiming an opposition to it. Clark v. Morton, 5 Rawle (Pa.) 535; Kahn v. Hoes, 14 Misc. 63.

All formalities of executor required by law must be shown by subscrib

ing witnesses when possible. Hale v. Monroe, 28 Md. 98; In re Hedyepeth, 150 N. C. 245.

The burden of proof that the will was in existence and unrevoked at time of testator's death or was accidently or fraudulently destroyed during testator's lifetime is on proponent. Knapp v. Knapp, 10 N. Y. 267; Augustus v. Graves, 9 Barb. 595; Perry v. Perry, 21 N. Y. Supp. 133; Grant v. Grant, 1 Sandf. Ch. 235; Bulkley v. Redmond, 2 Bradf. Surr. 281.

Declarations by a decedent that he had made no will, have been held admissible to rebut the claim that a will had been made. Durant v. Ashmore, 2 Rich. (S. C.) 185.

The two credible witnesses as to the contents of a lost will, need not necessarily have been witnesses to its execution, but they must be able to speak of the will from personal knowledge and not of a possible will. Matter of Waldron, 2 Gibb. Surr. 264.

Where the tenor and due execution of a will are properly proved and the executor to whom it was delivered by executrix for safekeeping, testifies to continuous custody of it, the subsequent loss of it, his search therefor and his failure to find it, the will is entitled to probate. Matter of Cosgrove, 1 Mills Surr. 535.

Declarations of the testatrix made about a week before her death, in which she spoke of the will as being in the custody of the executor, are competent to rebut any inference of revocation arising from the loss of the will. Matter of Cosgrove, 1 Mills Surr. 535.

The declaration of a decedent concerning her will or the disposition of her property, tending to show that she intended to leave a will and codicil shown to have been executed by her are inadmissible to prove their existence or non revocation at the time of her death. Matter of Kennedy, 167 N. Y. 163.

No presumption as to the continued existence of a will arises from the proof of their execution so as to establish the existence thereof at the time of death but failure to find such will after careful and exhaustive search raises a presumption that defendant destroyed the will *animo revocandi*. Matter of Kennedy, 167 N. Y.; Hard v. Ashley, 88 Hun, 103.

Declarations of a testatrix not accompanied by any act to the effect that she had not revoked or destroyed her will are inadmissible. Matter of Kennedy, 1 Mills Surr. 382.

Probate of a will refused where the execution of a subsequent lost will revoking the former is proved, to be wholly inconsistent with a prior will. Matter of Myers, 1 Mills Surr. 176.

Where a will previously executed and revoking in terms a former will, cannot be found after the death of the testator, there is a presumption that it was destroyed by the testator, and the burden of overcoming this presumption rests with the party seeking to probate such a will as a lost or destroyed will. Matter of Barnes, 70 App. Div. 523.

A Surrogate has no power to probate a will which was accidently destroyed by fire during the lifetime of the testator, but without his knowledge. Matter of Reiffeld, 36 Misc. 472.

If, in an action to establish a lost codicil, the plaintiff is shown on the face of the codicil to have " a probate interest " in its establishment that is sufficient to enable her to maintain the action. Donlon v. Kimball, 61 App. Div. 31.

In order to establish an instrument as a lost will, plaintiff must prove that the will was in existence at the time of death of testator or that it was fraudently destroyed during his lifetime. Perry v. Perry, 49 St. Rep. 291; Keery v. Dimon, 72 St. Rep. 125; 153 N. Y. 662.

It has been held that the testimony of the plaintiff as to the exhibition to her of the will be deceased, and her reading it in her presence, if not in violation of the spirit was in violation of the spirt of sec. 829 of the Code of Civil Procedure. Keery v. Dimon, 72 St. Rep. 125; 153. N. Y. 662.