In the Matter of the Estate of JOSEPHINE WRIGHT WUPPERMANN, Deceased.

Surrogate's Court, New York County, November 5, 1937.

*Gibboney, O'Brien & Hayes,* for A. Edward Wuppermann, trustee, petitioner (now deceased), and for the Chemical Bank and Trust Company, successor trustee.

*Lawrence R. Condon,* for Josephine W. Langdon, also trustee, petitioner.

*Francis C. Dale,* for the respondents.

*Frederick W. Sperling,* special guardian, for infants.

DELEHANTY, S.   Deceased died a resident of the State of Connecticut on September 17, 1936.   A will dated October 15, 1935, was admitted to probate by the Probate Court of that State on October 13, 1936.   This instrument directs the disposition of all of the property of the deceased which consisted in part of parcels

of real property located in the county and State of New York. An exemplified copy of the will of October 15, 1935, was duly filed in this court and letters of trusteeship duly issued by this court to the trustees named by deceased. This real property is not specifically devised under the terms of the instrument but comprises a part of deceased's residuary estate.

The present proceeding was instituted by the trustees to obtain a determination of the validity of the will in so far as it affects the disposition of such real property. If it be held that the real property is not validly disposed of by this instrument a determination is sought respecting the validity of dispositions of the property made in a prior will and codicil executed by deceased on September 10, 1934, and November 22, 1934, respectively, and in a prior will which is said to have been executed on October 9, 1935. The commentary made hereafter respecting the last three instruments mentioned is based upon the assumption that proof exists which would establish the due execution of each of them. Neither of them has been offered for probate and no proof in fact has been made respecting any of them. In view of the conclusions reached the lack of proof in this record of the instruments is immaterial.

Article sixth of the will of October 15, 1935, states:

" All the rest, residue and remainder of my estate, real, personal and mixed, and of every nature and description and wheresoever situated, I give, devise and bequeath to my executor and executrix hereinafter named, and their successors, in trust, nevertheless, for the following purposes:

" 1. To invest and reinvest the same and to collect the rents and profits therefrom, and quarter yearly from the date of my death to divide the net income thereof into as many equal shares or parts as I may then have (a) children me surviving, (b) deceased children who have left any living lineal descendants, and (c) widows, unremarried, of deceased sons of mine then living without any living lineal descendants, and to apply or pay over the same, quarter yearly from the date of my death, as follows:

" (a) A full share of the said net income to each of my children while living.

" (b) A full share of the said net income to the persons as shall, at the time of the said quarter yearly division and payment of the net income of said trust aforesaid, constitute the children and lineal descendants of a deceased child, in equal portions *per stirpes* and not *per capita;* subject, however, to the payment of one-half of the same to the widow, unremarried, if any, of a deceased son leaving lineal descendants as aforesaid, living at the time of the said quarter yearly division and payment of the net income of said trust so long as she remains unremarried.

" (c) One-half of one share of the said net income to the widow, unremarried, while living, of any deceased son of whom there is no surviving lineal descendant at the time of the said quarter yearly division and payment of the net income of the said trust so long as she remains unmarried, the residue and all of said share on the death or remarriage of said widow to be distributed among the distributees in paragraph (a) and (b) hereof immediately preceding as herein provided, except that the widow of any deceased son shall not be included as a distributee as to any additional payments provided for in this paragraph to be made to the distributees under subdivisions (a) and (b) hereof.

" 2. The within trust shall continue until the death of the final survivor of the following; my children, Adolph Edward Wuppermann and Josephine Wuppermann Langdon, my grandchildren, Audrey Wuppermann Brooks, George Wuppermann, Claudia Wuppermann, Harvey Cook, Carlos Cook, Philip Herrman, James Stewart Herrman and Mildred McNeil and my great-grandchildren, Roderick McNeil, Josephine McNeil and Virginia Loring Brooks, and upon the death of the final survivor.

" (a) The trustees shall then divide the corpus of principal of said trust funds into as many shares or parts as there shall be at the time of the termination of said trust, children of mine living and deceased children leaving lineal descendants them surviving, and shall then distribute one equal share to each of my children then, at the time of the termination of said trust, surviving, and one equal share to the persons as shall then, at the time of the termination of said trust, surviving, constitute the children and lineal descendants of a child of mine, in equal portions, *per stirpes* and not *per capita*, in every case where there may be a deceased child of mine leaving lineal descendants as aforesaid surviving.

" (b) If, however, at the time of the termination of trust and the distribution of the principal thereof any one of my three sons shall have died leaving no descendant or descendants surviving him and at such time there shall be living one or more unremarried widow or widows of said son or sons, then and in that case, I direct my trustees to divide the principal of said trust fund in such a manner so that said unremarried widow shall receive one third of the share or shares to which my said son or sons or his descendants would have been entitled to receive upon said distribution in case he or they should have been then living, and I direct that said one third of such a share shall then be paid over and distributed to said unremarried widow or widows and the remainder of the principal of the trust shall then be distributed as provided for in the preceding clause (a)."

The validity and effect of the instrument of October 15, 1935, so far as it affects the disposition of the real property located in this State, must be determined by the laws of this State. (Dec. Est. Law, § 47; *Bishop* v. *Bishop*, 257 N. Y. 40; *Monypeny* v. *Monypeny*, 202 id. 90; *Lowe* v. *Plainfield Trust Company*, 216 App. Div. 72, 75.) The trust under article sixth of the will is designed to continue during the lives of thirteen persons in being at the death of deceased. This is an attempted restraint of alienation of the property for a period obviously in excess of the period of suspension of alienation permitted by the statutes of this State. So far as the real property in this State is concerned the provisions of the will of October 15, 1935, are void. (Real Prop. Law, § 42; *Leach* v. *Godwin*, 198 N. Y. 35; *Matter of Perkins*, 245 id. 478; *Matter of Beale*, 213 App. Div. 13.) The remainder interests are clearly contingent and cannot be accelerated. (*Matter of Silsby*, 229 N. Y. 396; *Matter of Durand*, 250 id. 45.)

This holding of invalidity makes it necessary to consider the further question whether the provisions of any will of deceased executed prior to October 15, 1935, which would have validly disposed of the real property are effective or whether such valid provisions were revoked by the probated instrument. In the will which is said to have been executed by deceased on September 10, 1934, her residuary estate is placed in trust with directions for the payment of income and principal for the benefit of and for the lives of the same class of persons as those who were mentioned as beneficiaries of the trust in the instrument of October 15, 1935. The trust under the 1934 will was limited, however, on the lives of two of deceased's children and this will, if effective, validly disposes of the real property under the laws of this State. A codicil said to have been executed on November 22, 1934, made a change in the provisions for the benefit of one of the daughters of deceased. It eliminated this daughter as one of the persons by whose life the trust was measured and substituted another daughter in her stead for that purpose. The validity of the trust provisions was, therefore, not affected.

In a will which is said to have been executed by deceased on October 9, 1935, the residuary estate is placed in trust under terms which are identical with the provisions of article sixth of the instrument of October 15, 1935. Since the trust there is likewise measured by the thirteen lives mentioned in article sixth it is also invalid so far as the real property is concerned. Neither the will of October 9, 1935, nor the will of October 15, 1935, contains a revocation clause. The precise question to be determined is whether in the absence of a revocation clause in either of the latter two wills and the failure to

validly dispose of the real property in either of them the provisions of the 1934 will and codicil are unrevoked and, therefore, effective.

It is clear that in the absence of revocatory clauses in the latter two of the four instruments all of them must be considered together to determine the intention of deceased. " A later will is not necessarily a revocation of a prior will, unless by it the prior will is in terms revoked and cancelled, or by the later will a disposition is made of all the testator's property, or the same is so inconsistent with the former will that the two cannot stand together, or that the former will is revoked *pro tanto.* More than one will may exist at the same time and they may be construed together if such was the intention of the testator." (*Matter of Cunnion,* 201 N. Y. 123, 126.) It is a rule of general application that if a later will makes a valid disposition of all of the testator's property it is inconsistent with the existence of any prior will and without express words of revocation amounts to a revocation of all wills previously executed. (*Newcomb* v. *Webster,* 113 N. Y. 191; *Matter of Sheldon,* 158 App. Div. 843; *Matter of Tinker,* 127 Misc. 286; *Matter of McMullen,* 95 id. 404; *Matter of Gilman,* 65 id. 409; *Ludlum* v. *Otis,* 15 Hun, 410.) It should be considered whether this rule applies here, the court having held that the provisions for disposition of the real property in the instruments of October 9, 1935, and October 15, 1935, are not valid.

Testamentary instruments which contained directions for exercise of a power of appointment and which failed because of some invalidity have been held not to revoke an earlier and valid exercise of the power. (*Matter of Pilsbury,* 50 Misc. 367; affd., 113 App. Div. 893; affd., 186 N. Y. 545; *Austin* v. *Oakes,* 117 id. 577.) It is the viewpoint of the writer that the cases dealing with the exercise of a power of appointment are not controlling on the question here presented. One instance at least exists of a holding by a court that a valid disposition in a prior will survives despite the invalidity of a provision relating to the same subject-matter in a later will. (*Altrock* v. *Vandenburgh,* 25 N. Y. Supp. 851.) The opinion shows that the court there relied upon the argument in *Austin* v. *Oakes* (*supra*) and reached its conclusion with a great deal of doubt. A case holding against enforcement of the provisions of the prior instrument is *Canfield* v. *Crandall* (4 Dem. 111). There by a codicil executed within two months of his death deceased stated that he expressly confirmed his former will except as to the second item. In the will the first item had given a life use of all deceased's property to his wife. In the second item it provided that on the death of the wife half of the property was to go to one society, one-quarter to another and one-quarter to a third. By the codicil this second item was changed so as to give one-third of the remainder

to each of the three societies. Two of these corporations had been organized under chapter 319 of the Laws of 1848 which provided that corporations so organized could not take gifts under a will executed within two months before death. Argument was made that the gifts under the will were thereby revived. The surrogate held otherwise.

The cases and the commentators agree that the test is the intention of the testator as found in the instruments. The question always is, therefore, what did the testator in the particular case mean? If a prior valid direction concerning a subject-matter which a testator invalidly seeks to dispose of by a later instrument is to be saved the court must find in the instruments an express or implied declaration of intention by the testator that the later direction is tentative and is to be operative only if lawful. This intention of the testator is not enough unless the court finds further an intention that if the tentative direction in the later instrument turns out to be invalid the earlier instrument is to be deemed in effect. Only such a combination of intentions will save a gift validly made in an earlier instrument.

Here the residuary trust which is in controversy deals not only with real estate but with personal property. As to the latter, the trust is valid since it is valid under the laws of the domicile of the testatrix. If then this court were to hold that the invalidity of the trust so far as it affected realty in New York revived the plan for real property distribution contained in the next prior valid instrument there would be reached a most incongruous result. It would be straining beyond reason the doctrine of imputed intention to deem that this testatrix intended to set up her entire residuary estate in a trust with definite provisions for the disposal of the income and principal but with a reservation in her mind of the possibility that the instrument wherein she declared her purposes might be held in part invalid and some earlier instrument might be held to govern disposition of her real property. If this combination of intention is to be found it is necessary to assume that she contemplated the possibility of having two instruments to guide her trustees in the performance of their duties and two instruments as the source of their powers. She cannot reasonably be held to have intended any such result. She was dealing with the whole of her property in this partially invalid instrument. The instrument excludes all prior directions of testatrix and revokes all her prior testaments. As a consequence the real property situated in this State passes as intestate property.

Submit, on notice, decree construing the will in conformity with this decision.