In the Matter of LILLIE M. DURAND et al., Individually and as Executors of JOHN E. DURAND, Deceased, et al., Appellants.

VIRGINIA R. DURAND et al., Respondents.

46

(Argued November 22, 1928; decided December 31, 1928.)

*Clarence P. Moser* and *Raymond Bentley* for appellants. The provisions of the will effective if Samuel E. Durand does not survive Lillie M. Durand, may suspend the absolute ownership of personal property during portions of the lives of persons who were not in being at the testator's death, and such provisions are, therefore, void. (*Chastain* v. *Tilford*, 138 App. Div. 746; 201 N. Y. 538; *Simpson* v. *Trust Company of America*, 129 App. Div. 200; 197 N. Y. 586; *Schlereth* v. *Schlereth*, 173 N. Y. 444; *Matter of Patten*, N. Y. L. J. Jan. 15, 1927; *Matter of Horner*, 237 N. Y. 489; *Matter of Wilcox*, 194 N. Y. 288; *Fargo* v. *Squiers*, 154 N. Y. 250; *Hoyt* v. *Hoyt*, 125 Misc. Rep. 95; 215 App. Div. 773; *Matter of Chittick*, 243 N. Y. 304; *Smith* v. *Edwards*, 88 N. Y. 92; *Greenland* v. *Waddell*, 116 N. Y. 234.) The provisions of the will cannot be sustained so far as they provide for children of Samuel E. Durand, who were living at the testator's death, and declared void as to afterborn children, and the issue of any child of his dying before the death of his mother. (*Matter of Hardgrove*, 223 App.

Div. 646; *Hoyt* v. *Hoyt*, 125 Misc. Rep. 95; 215 App. Div. 773; *Matter of Horner*, 237 N. Y. 489; *Bailey* v. *Buffalo L., T. & S. D. Co.*, 213 N. Y. 525; *Benedict* v. *Webb*, 98 N. Y. 460.) The effect of the suspension of absolute ownership is that the provisions of the will dealing with the contingency of Mrs. Durand surviving Samuel Durand are void in their entirety, resulting in intestacy. (*Hoyt* v. *Hoyt*, 125 Misc. Rep. 95; 215 App. Div. 773; *Fargo* v. *Squiers*, 154 N. Y. 250; *Matter of Silsby*, 229 N. Y. 396; *Matter of Trevor*, 239 N. Y. 6; *Central Trust Co.* v. *Egleston*, 185 N. Y. 23; *Baker* v. *Gerow*, 126 N. Y. Supp. 277; *Matter of Crane*, 164 N. Y. 71; *Lewisohn* v. *Henry*, 179 N. Y. 352.) In case Mrs. Durand accepts the provisions of the will, and Samuel E. Durand does not survive his mother, the residuary estate vests in him by intestacy as next of kin of the testator. (*Schlereth* v. *Schlereth*, 173 N. Y. 444; *Clark* v. *Cammann*, 160 N. Y. 315; *Doane* v. *Mercantile Trust Co.*, 160 N. Y. 494; *Matter of Briggs*, 128 Misc. Rep. 221; *Matter of Silsby*, 229 N. Y. 396; *Matter of Bloodgood*, 129 Misc. Rep. 398; 223 App. Div. 640.)

*William F. Strang* for respondents. The decision of the surrogate is correct and should be upheld. (*Matter of Trevor*, 239 N. Y. 6; *Matter of Horner*, 237 N. Y. 481; *Matter of Hitchcock*, 222 N. Y. 57; *Matter of Silsby*, 229 N. Y. 396; *Matter of Chittick*, 243 N. Y. 304; *Kennedy* v. *Hoy*, 105 N. Y. 134; *Matter of Gallien*, 247 N. Y. 195; *Carrier* v. *Carrier*, 226 N. Y. 114.) The elimination of the invalid possible partial life estates and the decreeing that the remainders vest in possession upon the death of the life tenant is in accordance with the theory of our statutes. (*Matter of Conger*, 40 Misc. Rep. 157; 81 App. Div. 493.) The testamentary provisions in favor of the grandchildren living at the testator's death are separable and must be upheld in any event. (*Matter of Mount*, 185 N. Y. 162; *Matter of Colegrove*, 221 N. Y. 455; *Matter*

*of Hitchcock,* 222 N. Y. 27; *Matter of Silsby,* 229 N. Y. 397; *Matter of Horner,* 237 N. Y. 489; *Matter of Trevor,* 239 N. Y. 6.)

*George A. Carnahan* for undetermined infants. The surrogate and the Appellate Division correctly held that upon declaring that all trusts for grandchildren, both living and afterborn, were void, the residuum of the estate upon the death of the widow vested in the then living grandchildren. (*Matter of Horner,* 237 N. Y. 489; *Matter of Trevor,* 239 N. Y. 6; *Matter of Chittick,* 243 N. Y. 304.) The trusts for the living grandchildren are not separable from those set up for the afterborn grandchildren. (*Matter of Horner,* 237 N. Y. 489; *Matter of Trevor,* 239 N. Y. 6; *Hoyt* v. *Hoyt,* 125 Misc. Rep. 95.)

CRANE, J. John E. Durand, a resident of the city of Rochester, New York, died at Rochester on the 15th day of May, 1926, survived by his widow, Lillie M. Durand, sixty-three years of age, and by his only child, Samuel E. Durand, who was then thirty years of age. Samuel Durand was married, and his wife is still living. They have two children, both of whom were living at the time of the testator's death: Virginia Ranlet Durand, Jr., who was then five years of age, and John Ewing Durand, who was then three years of age. No other children have since been born. The deceased left no descendants of any deceased child.

Mr. Durand's estate consisted entirely of personal property, the gross value of which as fixed in the transfer tax proceeding, being about $1,150,000, subject to debts and funeral expenses of about $20,000. He left a will and codicil, dated respectively May 2, 1923, and December 24, 1925, which have been probated. They provide for various legacies and trust funds, totaling $50,000 for certain charities and for the testator's niece and daughter-in-law; two trusts of $10,000 each for the education of the two living children of Samuel E. Durand, above

mentioned; a trust of $100,000 for Samuel E. Durand during his life, with remainder to the granddaughter, Virginia Ranlet Durand, Jr., and a similar trust of $100,000 for his son, with the remainder to John E. Durand, the grandson. The residue of the estate was disposed of in the eleventh and twelfth clauses of the will, which are here quoted in full, as they have given rise to this litigation:

" *Eleventh.* All the rest, residue and remainder of my property, both real and personal, I give, devise and bequeath to be disposed of by my executors as follows:

" If my wife, Lillie M. Durand, survive me, said residuary estate is to be held by my executor, Samuel Ewing Durand, as trustee, or by his successor if for any reason he does not qualify, to keep said fund invested and pay the net income therefrom to my wife, Lillie M. Durand, semi-annually, during the remainder of her life; and upon her death my said trustee shall pay over the corpus of said residuary estate to my son, Samuel Ewing Durand, if he be then living, and close the trust.

" If my wife do not survive me, but my son, Samuel Ewing Durand, do survive me, then upon my decease my executors shall pay said residuary estate to my said son as residuary legatee under this will.

" *Twelfth.* If my wife, Lillie M. Durand, survive me, but my son, Samuel Ewing Durand, be not living at her decease, then upon her decease, or if neither my wife nor son survive me, then upon my decease, I direct that said residuary estate, together with any accumulations belonging thereto and undistributed; be paid over to the Rochester Trust & Safe Deposit Company as trustee, or retained by said Trust Company if it shall then be acting as trustee of said fund, and said trustee shall thereupon divide said fund into as many equal parts as my son shall have children living at the time of such division, except that if any of his children shall have theretofore died,

leaving issue then living, the share their parent would have taken if then living shall be set apart, held during minority, and paid to such issue upon arrival at twenty-one years of age. Said trustee to hold one of such equal parts for the benefit of each of the children of my son then living, pay the net income therefrom to the mother of such child during his or her minority, and thereafter pay the income to such child until he or she arrives at thirty years of age, at which time the principal shall be paid over to the beneficiary, and that particular trust closed.

" In the event of the death of any such child living at the time of such division and before arriving at thirty years of age, then upon such death the principal of the fund for the benefit of the one so dying, together with all accumulations belonging thereto and undistributed, shall be distributed to the husband, wife, heirs-at-law and next of kin of the one so dying, as though he or she had died the intestate owner thereof."

The codicil modifies the twelfth paragraph in the following words:

" *Third.* I modify, and add to, the ' twelfth ' paragraph of my said will of May 2, 1923, as follows:

" Whenever, as provided in the said ' twelfth ' paragraph of my will, any grandchild or great-grandchild of mine becomes the owner of a fund, subject only to the necessity of arriving at twenty-one years or thirty years of age as the case may be, before becoming entitled to full ownership in possession and to have the trust as to that particular fund terminated, I give to each such grandchild or great-grandchild the right to dispose of the principal of such fund by his or her will made after arrival at legal age to make a will of personal property, and I further direct payment and distribution to such appointee, if any; and in default of such appointment by will, I direct that the principal be disposed of as directed by said ' twelfth ' paragraph of my will."

In this proceeding the executors have asked for a construction of this will, relating to the disposition of the remainder of the estate under the eleventh and twelfth clauses, as modified by the codicil. All parties are agreed that there is here a suspension of absolute ownership for a longer time than is permitted by the Personal Property Law (Cons. Laws, ch. 41), section 11. In case Samuel Ewing Durand, the son, died during the lifetime of his mother, the testator directs that the residuary estate be paid to the trust company, as trustee, which shall thereupon divide the fund into as many equal parts as the son shall have children living at the time of such division. The trustee is to hold each of the parts and pay the net income therefrom to the mother during the minority of each child, and thereafter pay the income to each child until he or she arrives at thirty years of age, at which time the principal shall be paid over to the beneficiary and the trusts closed in the order of the happening of such events.

That the son, Samuel Ewing Durand, may have other children than the two now living, before the termination of the life estate, renders this proposed disposition illegal, as it ties up the estate and prevents its vesting for longer than two lives in being. The power of alienation would be suspended during the lifetime of unborn child or children, or until they should arrive at thirty years of age.

The scheme of the maker of this will was first to provide for his wife, and then for his son. This he did by giving the income of the remainder of the estate, after certain bequests, to his wife for life; upon her death the principal to go to the son. The father expected the son in this case to look after his children, no matter how many there might be; in case of the son's survivorship, the maker of the will had no anxiety about the welfare of his grandchildren. If, however, the son should not survive his mother, the life beneficiary, the grandfather desired to provide for the grandchildren. This to him apparently was an uncertain problem; two were still very young, too

young to give any forecast as to their nature, character or wisdom. They might turn out to be improvident, extravagant, reckless. Other grandchildren might come along, whom the grandfather would never see. With these forebodings shadowing his mind, he tried to provide for contingencies by a very appropriate and thoughtful plan. He would put the principal fund into a trust, the income to be paid to his daughter-in-law, the mother of his grandchildren, annually until the children became twenty-one years of age, and after they were twenty-one, then the income should be paid to them until each arrived at the age of thirty. On the thirtieth birthday each child was to receive his proportionate part of the principal. The difficulty with this wise plan, which the grandfather did not foresee, although he was a lawyer, is the law of our State in statute form, which says that the absolute ownership of personal property shall not be suspended by any limitation or condition for a longer period than during the continuance and until the termination of not more than two lives in being at the death of the testator. This trust would suspend the vesting of the principal of this estate not only during the lives of the two children who are now alive, or until they arrive at the age of thirty, but also during the life of unborn children, until they became thirty years old; that is, those who may be born to Samuel Ewing Durand and his wife before the death of the grandmother, the life beneficiary. The trust for the two cannot be separated from the rest and held to be good as the grandfather did not intend to exclude after-born children; neither did he intend the estate in remainder to vest in the new-born children at the grandmother's death. This is not a case where the illegal suspension may be cut off.

It is for this reason, I take it, that all parties are agreed, or were agreed before the Surrogate, that the provisions of the twelfth clause are illegal, and the trust void. Both asked for a determination of the Surrogate as to the

disposition to be made of the remainder. He decided that the trust provisions were void and held that they should be eliminated together with the gift of income to the mother of any minor grandchild, and construed the will as providing that in case Samuel E. Durand does not survive his mother, the life beneficiary, the residuary estate will vest absolutely in the children of Samuel E. Durand, living at Mrs. Durand's death, in equal shares. The Appellate Division, while unanimously affirming this decree of the Surrogate, has certified the appeal to this court.

The citation of authorities is of very little use in cases of this kind upon the fundamental principles of the law of wills. All the authorities cited are a mere repetition of these rules. The difference in the opinions is in their application to varying facts. What constitutes a suspension of the power of alienation is to be determined by the facts. The law is plain (*Matter of Chittick*, 243 N. Y. 304.) That we must consider in determining the application of section 11 of the Personal Property Law, not what the actual conditions now are, but what may happen, is well established. (*Matter of Mount*, 185 N. Y. 162.) If the dominant purpose is the creation of a single trust to continue during more than two minorities, absolute ownership is illegally suspended and the trust in its entirety is void, even though in some contingencies it may end within the statutory term. (*Matter of Horner*, 237 N. Y. 489.) In some instances it has been possible to disregard that portion of the will which rendered the trusts illegal, and preserve the rest. (*Matter of Trevor*, 239 N. Y. 6; *Matter of Horner, supra.*) These cases express no new rule, but merely apply long-standing and well-recognized rules to new facts. The dominant, underlying principle in all these cases is to carry out as far as possible within the meaning of the statute, the intention of the testator. If we can read into a will an intention to preserve any part of it, even with the illegal portions stricken out, the

court will do so. In such a case we try to determine whether the maker of the will would have created the trust if all his express purposes could not be accomplished. This is not strictly law; it is a matter of good judgment, the judgment of men who according to our judicial system must in the last analysis determine the question. In declaring a testator's intention, however, the courts are limited to the words which the testator, himself, has used in his will.

Our judgment in reading this will is that the testator desired to provide for all his grandchildren equally. He could have done so, as has the Surrogate in his decree, by giving the residuary estate absolutely to the surviving grandchildren on the death of the life beneficiary. This is the very thing, however, that the testator did not do, and did not want to do. He did not want his grandchildren to have the principal of the estate until they were thirty years of age. He provided the income only should be paid to them after they became twenty-one years of age, and that the principal should be kept from them until they were thirty. The revision attempted by the court below has done more, however, than eliminate intervening trusts and accelerate the remainders as in *Kalish* v. *Kalish* (166 N. Y. 368, 375). It has accelerated them by giving the absolute ownership to persons who were to take a defeasible ownership under the will as it was written. By the will as it was written, the death of a grandchild intestate while the trust was still in force would have carried the fund over, or a proportionate interest therein, to alternative remaindermen, the persons, that is to say, who would succeed under the intestate laws to any property belonging to the one so dying. By the will as rewritten the remainders thus given to those who would take upon intestate succession are cut off, for the owner of the remainder, enjoyed before its proper time, may not only dispose of it by will so as to bar his next of kin, but may consume it or dispose of it by conveyance

during life. The law does not accelerate remainders except in favor of the same persons who would take them if the intermediate estate, expunged as illegal, had been allowed to run its course. (*Kalish* v. *Kalish, supra.*) He knew that his grandchildren were to get his estate. As a lawyer he must have realized that the easiest kind of a will which he could draw would be one vesting the remainder in his grandchildren. The dominant thought in his mind was their possible improvidence or extravagance, and he attempted to guard against this by the thirty-year provision. The codicil does not change the intention of the testator in this particular. He liberates the trust in only one particular; he gives to his grandchildren the privilege of making a will before thirty years of age. Emphasis is thus put upon his continuing desire that the principal shall not be at their disposal before that time.

We, therefore, cannot say that Mr. Durand, the testator, would have given his property in remainder to his grandchildren after the death of the life tenant, if he thought his attempted trusts were void. What provision he would have made we do not know. We do know that he did not make the provision that the decree of the Surrogate has directed. Even if we thought that Mr. Durand would have followed the interpretation which the lower courts have put upon this will, the fact is he did not do so, and the courts cannot reconstruct wills in accordance with the near intention of the maker.

The purpose which the testator had in mind has failed; the trusts for grandchildren and issue are void; the desire to give these grandchildren the remainder is laudable, but when the will of the grandfather has not done so, nothing remains but intestacy as to this portion. The courts must leave it as if there were no will. No power of revision of wills is intrusted to the courts. In the absence of a disposition by will the statute, not the court, provides for the disposition of the estate.

If the son survives his mother, the life beneficiary, he takes the remainder under the eleventh clause of the will; if he dies before his mother, the testator has failed to make any provision for such an event. In that case, there is an intestacy and his property will vest and is vested in his next of kin.

With this construction of the will of John E. Durand, the order of the Appellate Division and the decree of the Surrogate's Court should be reversed, with costs in all courts payable out of the estate, and the proceeding remitted to the Surrogate's Court for the entry of a decree in accordance with this opinion.

CARDOZO, Ch. J., POUND, ANDREWS, KELLOGG and O'BRIEN, JJ., concur; LEHMAN, J., dissents.

Ordered accordingly.