In the Matter of the Construction of the Will of Alf Brecke, Deceased.

Surrogate's Court, Richmond County, August 5, 1948.

*George M. Gunderson* for Ernst A. Nilson, as ancillary administrator *c.t.a.* of Alf Brecke, deceased.

*John M. Braisted, Jr.,* special guardian for any unknown distributees.

BOYLAN, S. The decedent died a resident and citizen of Norway, leaving a last will and testament admitted to probate in Norway and executed in accordance with the laws of the State of New York. Many parts of the will apply to personal property, to which this adjudication has no application. This determination only applies to the real property located in the State of New York and owned by the testator at the time of his death. (*Bishop* v. *Bishop,* 257 N. Y. 40; *Lowe* v. *Plainfield Trust Co.,* 216 App. Div. 72; *Matter of Wuppermann,* 164 Misc. 900; Decedent Estate Law, § 47.) The pertinent parts of the will read as follows:

" The remainder of my property shall devolve upon my wife * * *. I appoint the following gentlemen: (1) G. Strom Walsend, (2) Th. Nygaard, to assist my wife in the administration of the entire property that may devolve upon her upon my death — both the property she inherits from me and her own property.

" I stipulate hereby that none of these gentlemen can be discharged or removed from his position as long as they themselves

want to remain. Their remuneration is stipulated in such a manner that 5% of the taxable annual income devolve upon them as compensation; however never less than one thousand crowns to each.

" The powers of these gentlemen are such that should my wife be forced to touch the capital, the consent of these gentlemen must still be obtained, and they have absolute authority to decide which, and if so, what amount of the capital she is entitled to dispose of. As long as my wife disposes of the income the consent of these gentlemen is not required. Both gentlemen have the right and are under the obligation to render an accounting of the property every half year in order to show that it is being managed in the manner stipulated above.

" Upon the death of my wife the property shall be administered in the following manner;

" Strom Walsend and Th. Nygaard, are to act as testamentary executors and shall draw up an inventory of the estate and also see to it that the estate is distributed in the following manner:

" One half shall devolve upon the heirs mentioned under the above Item 1, namely the children of my sister, Mrs. Elizabeth Sundet and the children of my sister Linka Heggemsnaes.

" Similar to what has been said above, that namely only those children of my sister who are alive at the time of the death of my wife shall have the right to the inheritance, thus stipulating that distribution with respect to this share shall also be per capita.

" The other half shall devolve in accordance with the decision of my wife, upon: (a) My wife's niece Reidun Johansen, (b) and (c) my wife's nieces Tussa Englehart and Lilleba Aamodt, and finally, (d) the grand nephew of my wife, Anders Aamodt in equal parts.

" Should one or either of them predecease my wife, the survivor or survivors shall inherit the entire amount.

" It is further stipulated with respect to this inheritance that the income therefrom shall devolve upon my wife's sister, Mrs. Hertha Holm and her daughter, Randi Aamodt, during their lifetime. As long as both are alive, they shall divide the income. Upon the death of either of them her part shall devolve upon the persons mentioned under A, B, C and D, or the possible survivors of them share and share alike. Only upon the death of both of them shall the property devolve upon persons mentioned under A–D."

A reading of the entire will indicates that the deceased did not intend to create a life estate for the benefit of his widow, but

intended and did create various trusts in all of which she is the primary beneficiary. Specifically, the deceased indicated that he intended to create trusts for the benefit of his wife rather than a life estate when he appointed Walsend and Hygaard to " assist my wife in the administration of the entire property "; when he fixed their remuneration based upon annual income; when he provided that his widow could not invade the principal of the trust without their consent, and when he provided that they were obliged to account semiannually. (*Woodward* v. *James,* 115 N. Y. 346; *Close* v. *Farmers' Loan & Trust Co.,* 195 N. Y. 92; *Matter of Ardrey,* 232 N. Y. 109.)

When the deceased disposed of the first one half of his remainder estate he created a trust in which his widow is the life beneficiary and the children of his sisters, Elizabeth Sundet and Linka Heggemsnaes are contingent remaindermen. Upon the death of his widow, the children of Elizabeth Sundet and Linka Heggemsnaes who are alive at that time take the remainder per capita and not per stirpes.

We now approach the trust of the second one half of the remainder. If it is considered a single trust it is limited upon three lives, and would be therefore, void and result in complete intestacy of that part of the residue.

The cardinal principle of testamentary construction is that the court shall ascertain the intent of the testator and give effect to that intent provided that it is not contrary to public policy or an established rule of law. (*Matter of Buechner,* 226 N. Y. 440; *Close* v. *Farmers' Loan & Trust Co.,* 195 N. Y. 92, *supra*; *Hartnett* v. *Wandell,* 60 N. Y. 346; *Matter of Walsh,* 147 Misc. 281.) From a reading of decedent's will it is obvious that he intended to make provision for his wife, his wife's sister, Hertha Holm, and his niece, Randi Aamodt.

In *Matter of Drake* (153 Misc. 691, 692, affd. 246 App. Div. 758) the court said, " The modern tendency of the courts is to sustain so much of a trust as may be compatible with the particular intention of the testator and with his general testamentary plan, and to hold only such portions invalid as necessarily infringe the terms of the statute. (*Matter of Burling,* 148 Misc. 835, 844, and authorities there cited.) If there is a mode by which the testamentary directions may lawfully be effected and another method which would result in invalidity, the former will be deemed to have been intended in the absence of direct contrary expression or inescapable inference. (*Matter of Howells,* 145 Misc. 557, 559; *Matter of Bell,* 141 id. 720, 721, 722; *Matter of Storey,* 134 id. 791, 796.) "

The dominant wish of the testator was that his wife's sister, Hertha Holm, and his niece, Randi Aamodt, should receive the income for life from one fourth of his residuary estate and this purpose may be effectuated by a determination that he beneficially dedicated one quarter of the corpus to each for life, the entirety being retained *in solido* merely for convenience of investment during this period. (*Schermerhorn* v. *Cotting,* 131 N. Y. 48, 61; *Matter of Buttner,* 243 N. Y. 1, 4.)

There is a long line of cases in which the courts have resorted to the device of setting up separate trusts for the named beneficiaries in order to avoid the taint of illegality. (See *Matter of Colegrove,* 221 N. Y. 455; *Matter of Horner,* 237 N. Y. 489; *Looram* v. *Looram,* 269 N. Y. 296; *Matter of Mount,* 185 N. Y. 162; *Vanderpoel* v. *Loew,* 112 N. Y. 167; *Matter of MacIntyre,* 177 Misc. 833.)

The court holds that it was the intention of the testator to provide for two separate and distinct trusts in both of which the widow is the primary life beneficiary; in the first of which the wife's sister, Hertha Holm, is the secondary life beneficiary, and in the other of which the deceased's niece is the secondary life beneficiary. (*Oliver* v. *Wells,* 254 N. Y. 451; *Matter of Horner, supra; Matter of Trevor,* 239 N. Y. 6; *Matter of Gallien,* 247 N. Y. 195; *Matter of Durand,* 250 N. Y. 45; *Matter of MacIntyre, supra.*)

After providing for the life estates in Hertha Holm and Randi Aamodt, the deceased then provided " As long as both are alive, they shall divide the income. Upon the death of either of them her part shall devolve upon the persons mentioned under A, B, C and D or the possible survivors of them, share and share alike. Only upon the death of both of them shall the property devolve upon persons mentioned under A–D." It is the opinion of the court that the word " part " in the second sentence above quoted, refers to income, and the word " property " in the third sentence refers to corpus. These provisions are void, as they obviously suspend the power of alienation for more than two lives. (Real Property Law, § 42.)

It is presumed that the testator did not intend that his entire purpose or plan should fail because of the invalidity of a subordinate feature. "If we can read into a will an intention to preserve any part of it, even with the illegal portions stricken out, the court will do so. * * * This is not strictly law; it is a matter of good judgment, the judgment of men according to our judicial system must in the last analysis determine the question." (*Matter of Durand,* 250 N. Y. 45, 53–54, *supra.*) The

court can perceive of no reason why the trusts should fail in their entirety. The primary trusts for the benefit of the widow and the secondary trusts for the benefit of Hertha Holm and Randi Aamodt may stand, but the trusts for " the persons mentioned under A, B, C and D, or the possible survivors " must be severed and rejected. By an application of the principles of excision, the part of the will which reads " Upon the death of either of them her part shall devolve upon the persons mentioned under A, B, C and D, or the possible survivors of them share and share alike. Only upon the death of both of them shall the property devolve upon persons mentioned in A–D ", may be excised and disregarded. (*Matter of Durand, supra*; *Matter of Horner, supra*; *Carrier* v. *Carrier*, 225 N. Y. 114; *Kalish* v. *Kalish*, 166 N. Y. 368; *Harrison* v. *Harrison*, 36 N. Y. 543; *Matter of MacIntyre, supra*.)

When the testator provided that the other half devolve upon A–D, and provided further that should one or either of them predecease his wife, the survivor or survivors should inherit the entire amount, he created a remainder gift, and the question is whether or not such remainder may be accelerated.

Must all of the dispositive provisions subsequent in time of enjoyment to one judicially determined to be invalid, fall with the invalid clause and the property involved ultimately pass as a portion of the residuary estate as in intestacy, or may the ultimate dispositions be immediately effective and the remainders accelerated? The answer depends upon whether or not the following questions are answered in the affirmative or negative. Will those who would take upon the termination of the valid provisions of the trust necessarily be the same as those who would have taken upon the natural termination of the invalid provisions? Will the quantity or proportionate share of the property involved which each beneficiary would receive upon the termination of the valid provisions of the trust necessarily be the same as a matter of law as that each would have received under the normal termination of the invalid estate? If the answer to each of these questions is in the affirmative, the remainders will be accelerated and become effective at once. If the answer to either of the foregoing questions is in the negative, the gifts in remainder fall with the void underlying provisions. (*Matter of Horner*, 237 N. Y. 489, *supra*; *Kalish* v. *Kalish*, 166 N. Y. 368, *supra*; *Oliver* v. *Wells*, 254 N. Y. 451, *supra*.) " The law does not accelerate remainders except in favor of the same persons who would take them if the intermediate estate,

expunged as illegal, had been allowed to run its course.'' (*Matter of Durand*, 250 N. Y. 45, 55, *supra.*)

From a reading of the will it is obvious that the same persons will take at the time of the death of the second of the life beneficiaries as those who would have taken upon the natural termination of the invalid provisions, and that the quantity or proportionate share which each will receive at the termination of the valid trust provisions would be the same as each would have received upon the normal termination of the invalid estate. The determining factor is the death of the widow, the first life beneficiary. When she dies, if A, B, C and D are alive they inherit, but if any be dead, only the survivor or survivors inherit. Prior to or at the termination of the valid trust provisions it will be established who are entitled to inherit the corpus. So, too, it necessarily follows that prior to or at the termination of the invalid provisions, had they been permitted to stand, it would have been established who were entitled to inherit the corpus. The persons who will ultimately take the corpus, and their proportionate shares were definitely fixed and determined by the testator when he elected to make the death of his wife decisive of both questions. These persons in no event could ever change; nor could the proportionate part to which each remainderman will be entitled ever change. The gift of the corpus is valid and capable of acceleration.

The conclusions arrived at herein give full effect to the testator's general testamentary plan or scheme.

Enter decree in accordance herewith.