In the Matter of the Intermediate Accounting of UNITED STATES TRUST COMPANY OF NEW YORK, as Trustee of the Trust Created by WESLEY B. PHILLIPSON, Deceased, Respondent. MARIA E. PHILLIPSON, Appellant; BRAINERD F. PHILLIPSON et al., Respondents.

First Department, June 28, 1957.

*Sydney S. Levine* of counsel (*Herbert Gordon* with him on the brief; *Sidney S. Levine,* attorney), for appellant.

*John Henry Mottola* for trustee, respondent.

*Marie C. Connolly,* guardian ad litem for Brainerd F. Phillipson and others, infants, respondents.

BREITEL, J. Involved in this case is the construction of an *inter vivos* trust made by a father and husband in connection with his separation from his first wife. The proceeding was instituted by the corporate trustee, and in it the validity of the trust is attacked by the settlor's second wife.

Special Term simply held the trust valid, without elaboration of its reasoning for so holding. The trust may be sustained as valid, but only if it be construed, regardless of the form of the trust indenture, as a trust for the benefit of a family unit, measured by the minorities of not more than two of the children of the settlor. The necessity for such construction is that the trust indenture, both in its formal arrangement and in one particular as to its practical effect, measures the life of the trust by three lives, that is, by one life and two minorities, in violation of section 11 of the Personal Property Law.

The trust was created in 1951. At that time the settlor and his wife, from whom he was about to be separated, had three children, one aged six, and twins aged three. Thereafter, both the husband and wife remarried. The settlor, after having been married to the second wife for two years, became involved in another matrimonial separation and divorce. With his second wife he executed a separation agreement under which she was to receive, secured by way of assignment of the surplus income to be derived from the trust in suit, the sum of $3,000 annually. Divorce proceedings were instituted and, after hearing, but before decree or decision, the settlor died. His second wife is now contesting the vitality of the separation agreement, contending that a completed divorce was a precondition to its effectiveness. She attacks the trust in suit as invalid, for the purpose of enhancing the assets that would fall into the settlor's general estate. In that estate the second wife is claiming her right of election under section 18 of the Decedent Estate Law.

The trust indenture, in broad effect, grants a monthly income of $375 to the first wife for her maintenance, while unmarried, and the support of the children during their minority. In the event of the wife's remarriage, the payments continue, in the same amounts, but only for the support of the children during their minority. Should the wife die, the trust continues during the minority of the children, measured by the life of the survivor of the twins (who are the younger), with the same payments being applied by the trustee to the support of the children. After all the children reach their majority, or die, the corpus reverts to the settlor, if living, and otherwise passes in remainder to his living descendants, per stirpes. If, however, the wife survives the majority, or death, of the children and is still unmarried, she receives an annual, but somewhat reduced, sum.

Thus, subject to certain limitations, the trust is to continue during the life of the wife, and may be prolonged, if circumstance require it, during the period of the surviving minority of the twins. If one penetrate the formal structure to examine the actual intent of the settlor, rather than be controlled by the accident of verbalization, most of the trust may be sustained as valid.

When, in 1830, the statutory restraints on suspension of alienation were adopted in this State, the harshness of the limitation on the measuring of future estates and trusts, by two lives and an actual minority, immediately stimulated judicial remedies to alleviate the more unnatural curbings of salutary family purpose trusts. Progressively, and with constantly widening ramification, the courts resorted to excision of invalid provisions, broad construction, substitution of language, acceleration of remainders, and substitution of annuity concepts for income trusts. There would be no point in assembling here the extensive and innumerable instances of the application of such judicial remedies (4 Restatement, Property, Appendix, ch. A; 6 American Law of Property, ch. 4).

But in this case, there is no necessity for resorting to the more drastic measures which have been justified and used in the past. No whole estates need be eliminated as invalid. No annuities need be found where entrusted income provisions have been made, and, with one exception, the effect of the dispositive language need not be altered. All that need be done is for the court to focus on the settlor's dominant intent to determine whether within the language of the instrument such intent can be effected by some common sense construction.

" If we can read into a will an intention to preserve any part of it, even with the illegal portions stricken out, the court will do so. In such a case we try to determine whether the maker of the will would have created the trust if all his express purposes could not be accomplished. This is not strictly law; it is a matter of good judgment, the judgment of men who according to our judicial system must in the last analysis determine the question. In declaring a testator's intention, however, the courts are limited to the words which the testator, himself, has used in his will." (*Matter of Durand,* 250 N. Y. 45, 53–54.)

So oriented, it is quite clear that the purpose of this trust indenture, and its practical impact, is to provide a trust to support a family unit consisting of the wife and the three children. If the mother is to take care of the children, and if she remains unmarried, her support is just as essential as that of the support of the minor children. Should she remarry, as in fact she has, the obligation to provide support for her ceases; but the requirement to continue the support during the minorities of the children of settlor continues unabated. This need is met by continuing the payments in the identical sum to the wife, but this time, without the descriptive language that it is also for her support and maintenance. Palpably, the same family purpose and concern of the trust persists.

In the event the mother should die during the children's minority, then these payments must continue because the children still require support and the obligation of the settlor persists. To meet this eventuality, the trust indenture provides that the payments shall be applied (as distinguished from being paid over) for the support and maintenance of the children. Again, the amounts are identical, except that they are allocated, as they were in the case of the remarriage of the wife, to one third of the originally stipulated sum for the benefit of each of the three children.

The surplus income during the life of the trust is to be paid over to the settlor. When the trust terminates, the corpus reverts to the settlor, if living, and if dead, as is the case, it passes by way of remainder to his descendants, then living, in equal shares, per stirpes. The way events have occurred the settlor's descendants are the same children for whom he makes provision in this trust.

It is possible to sustain the trust here, and the integrity of the settlor's intent, if the actual minorities of the twins are retained as measuring lives, and the life of the wife be excluded. This does not affect her status as a beneficiary.

This analysis does a minimum of violence to the language of the trust indenture, although it involves construing language which in other contexts may well have a different meaning. Thus, in the opening phrases of the granting clauses the assets pass for uses " during the lifetime of ELIZABETH GRACE PHILLIPSON, wife of the Grantor, and the minority of such of their twin children THOMAS SHANE PHILLIPSON and MARGARET ALEXANDER PHILLIPSON, as may survive, or of the period of their joint minority, if both survive." But the detailed use provisions immediately following, provide as follows: " To pay the sum of Three hundred seventy-five Dollars ($375) each month to said Elizabeth Grace Phillipson, wife of the Grantor, for her maintenance and support and that of the children ". It is then provided that: " If she should remarry while either of their said twin children is a minor, the Trustee shall continue to pay to her the sum of Three hundred seventy-five Dollars ($375) each month until such children shall have reached their majority whereupon said payments shall cease." There then follows the provision that in the event of the death of the wife during the minority of the twin children, or their survivor, the same sum shall be applied for the children of the settlor. That sum, however, is allocated in three equal parts to serve the situation of any one of the children dying or the older reaching his majority during the surviving minority of one or both of the twins. Up to this point there is no necessity for using the wife as a measuring life, and, of course, she may be a beneficiary without her life being used as a measuring term.

However, there is one particular provision affecting the older child, Brainerd, which is troublesome. In the event that he survives, during his minority, the death of both twins, obviously in their minority, and his mother is still alive, he would be entitled to the application of income for his support. If this provision is to be retained there is no escape from using the mother as one of the measuring lives of this trust. But the price of preserving this remote contingency is the destruction of the trust, since this would involve using not only the lives of the twins as a measure but also a third life, that of the mother. This would be, indeed, a remote contingency. The children are all alive. Brainerd is 11 years of age, and the twins are aged eight. The contingency being remote, it does not do violence to the settlor's intent to abate the right. Indeed the settlor's recognized a similar necessity with respect to Brainerd's support. Under the indenture, had Brainerd survived his mother and the twins while still a minor, his support under the trust would

likewise fail. The point is, of course, that the settlor accepted that risk, relying on the probability that the twins, or at least one of them, would reach majority.

So, in close examination of the trust indenture one finds that only with respect to Brainerd's remote additional interest is it necessary to relate the trust period to the "life" of the wife. Apart from this remote contingency there would be no difference in the disposition of the trust income. On the contrary, again with the special exception with regard to Brainerd, the needs of the minor children may be satisfied, as well as the original need to provide support for the wife during their minority, if the trust is measured only by the period of the dependent minorities of the twins, and without recourse to using the "life" of the wife as an additional measuring term.

The seven provisions contained in the termination clause of the trust indenture are but extrapolations of the granting provisions based upon the use of the mother, as well as the minorities of the twins, as measuring lives. However, since we would construe the mother's interest to be that of a beneficiary only, and not use hers as a measuring life, these provisions are now neither applicable nor necessary. It follows from the construction here suggested that the trust will in all events, as they have now turned out, terminate upon the death or majority of the twins.

In reaching this conclusion in regard to this trust it is recognized that there are other alternatives, frequently used by the courts in sustaining the validity of family purpose trusts beset by the New York statutory rules against the suspension of the power of alienation. These alternatives have been considered.

One alternative would be to construe the gifts of income for the benefit of the infant children as annuities. (*Buchanan* v. *Little,* 154 N. Y. 147; *People's Trust Co.* v. *Flynn,* 188 N. Y. 385.) In order to accomplish this, a major distortion of the provisions for the use of such income would be required. The trust indenture, unequivocally, in the event of the death of the mother, provides that the income for the use of the children shall be applied to their benefit by the trustee. There is no outright and absolute gift of the income to the children, although the amounts are annual and fixed. Consequently, in order to find annuities in this situation one would have to change the very nature of the disposition, its control, and alienability. (Personal Property Law, § 15; 2 Scott on Trusts [2d ed.], §§ 154, 155.) Parenthetically, there would be nothing accomplished

in construing the gift of income to the wife as an annuity because it would not eliminate her as one of the three measuring lives.

Another alternative, frequently used by the courts, is to strike the offending life estates and accelerate the remainders provided they are vested. (*Oliver* v. *Wells,* 254 N. Y. 451; *Kalish* v. *Kalish,* 166 N. Y. 368.) In this trust the remainders are not vested, either as to the time of the division or those persons entitled to share in the division. Therefore, in order to authorize their acceleration one would have to convert contingent remainders into vested remainders, and this would be a more violent, and impermissible, distortion of the settlor's expressed intention (*Matter of Silsby,* 229 N. Y. 396; *Matter of Durand,* 250 N. Y. 45, *supra; Matter of Halsey,* 286 N. Y. 154).

One other alternative is that of construing the trust to provide three separate life interests in trust, one for each child of the settlor. Such life estates would be limited upon and follow the life estate in the mother. The device of separability has been often used and would particularly commend itself here, since it would permit preservation of the remote contingent additional interest of Brainerd, which under the discussion above must be eliminated. However, in order to find separability the courts have required some objective provision in the trust indenture indicating a separation at some point, although not overall, of the trust corpus. (*Matter of Horner,* 237 N. Y. 489; *Matter of Colegrove,* 221 N. Y. 455; *Everitt* v. *Everitt,* 29 N. Y. 39.) These elements are difficult to find in this case, particularly any provision to pay over the principal share of any child, when the trust directions on his behalf end. Moreover, unless the beneficiary of each trust is entitled to a vested remainder, contrary to the cross-survivorship clause of the trust here, problems of invalidity based on illegal suspension of alienability recur—thus reintroducing the very problem to be solved.

There are, undoubtedly, other possible methods of excision. But in the nature of such methods there is major redrafting and, consequently, greater departure from the settlor's purpose.

The trust, if modified in the manner indicated, may be sustained as valid, and the order of Special Term, holding the trust valid should be modified in accordance with this opinion, and, as thus modified, affirmed. The other issues raised upon the appeal involved no problem requiring discussion, and in those respects, too, the order should be affirmed.

Accordingly, the order of Special Term should be modified as herein indicated, and as modified be affirmed, together, with costs to petitioner-respondent and respondents-respondents. Settle order.

Peck, P. J., Botein, Rabin and Bastow, JJ., concur.

Order unanimously modified in accordance with the opinion herein and, as so modified, affirmed, with costs to petitioner-respondent and respondents-respondents. Settle order on notice.