George W. Pratt, S.
On the accounting under the trust set up in articles twelfth-fifteenth the petitioner seeks a construction of those articles of the will of John Maloney, dated May 23, 1933, who died January 12, 1937, which will was admitted to probate January 18,1937.
He left surviving his widow, Marietta Maloney (Watson), who received full benefits of the trust set up in article twelfth until her death, and who died testate, October 28,1956; a brother, Daniel Maloney, who died March 9, 1940, intestate and without a widow or issue; a nephew, John Harris Maloney; and Margaret, Joseph, Bose, Mary, and Leo Kelly, first cousins, once removed. These Kellys were the children of decedent’s cousins Anna (Annie) Kelly and Mary Kelly who both predeceased the testator; Anna (Annie) Kelly, having died intestate July 17, 1936 was survived by three children, Margaret M. Bubery, Joseph Kelly and Bose P. Koch; and Mary Kelly having died intestate on July 5, 1936, was survived by two children, Mary J. Kelly and Leo P. Kelly Jr.
Articles twelfth through fifteenth read as follows:
Twelfth. I give, devise and bequeath all the rest, residue and remainder of my property of whatsoever nature, or wheresoever situated, or in which I may have any interest at the time of my death to said First National Bank and Trust Company of Corning, in trust, however, for the following purposes: To Invest and reinvest the same and keep the same invested and to pay the net income thereof to my wife, Marrietta Maloney, for and during the period of her natural life, and to pay her funeral expenses at her death.
In the event that the net income from this trust fund should not amount to Two hundred fifty dollars ($250.00) per month, I direct my trustees to pay such additional amount out of the principal or corpus thereof so that there shall be paid to my said wife the sum of Two hundred fifty dollars ($250.00) per month to be paid in monthly installments.
In the event that my said wife should become so circumstanced that the said sum of Two hundred fifty dollars per month should not be sufficient for her comfortable maintenance and support, I direct and authorize my said trustee to expend for her benefit such additional sums as should be necessary or proper for her comfortable maintenance and support and leaving it to the sole discretion of my said trustee to determine as to such necessity.
*99 Thirteenth. From and after the death, of my said wife, Marrietta Maloney, I direct that the trust established under the preceding paragraph shall continue during the life of my nephew, John Harris Maloney, or my brother, Daniel Maloney, whichever, shall longer survive, and to pay the net income of said trust fund to the said John Harris Maloney and Daniel Maloney in equal shares during the lives of both.
In the event that the said John Harris Maloney shall predecease my said brother, Daniel Maloney, and shall die leaving no children him surviving, excluding adopted children, I direct that one-half of the income of said trust fund shall during the life of the said Daniel Maloney be paid to my cousins, Annie Kelley, and Mary Kelley, share and share alike, except that in the event either of them shall not be surviving at the time such payments shall accrue, or die during such period as such payments may be made leaving descendants her surviving, such descendants shall take the payments which would have accrued to the ancestor had she lived, sharing the same per stirpe.
In the event that my said nephew, John Harris Maloney, shall predecease my said brother, Daniel Maloney, and leave children him surviving excluding adopted children, I direct that the said one-half of the income of said trust fund shall during the life of the said Daniel Maloney be paid to the children of his blood, excluding adopted children, share and share alike.
In the event that the said Daniel Maloney shall predecease the said John Harris Maloney, I direct that all of the income of said trust fund from his death shall be paid to the said John Harris Maloney.
Fourteenth. At the death of the said Daniel Maloney or John Harris Maloney, whichever longer survives, I direct that the corpus or principal of said trust fund shall be given absolutely to the children of the said John Harris Maloney of his own blood, excluding adopted children, share and share alike, except that, if at the time of such payment, any of the said children of his blood shall have died leaving children them surviving, such survivors shall take the share the parent would have taken, if living.
Fifteenth. In the event that at the time of the death of said Daniel Maloney or the said John Harris Maloney whichever longer survives, there should be no children or descendants of the said John Harris Maloney of his own blood then living, excluding adopted children, I direct that the corpus or principal of said trust fund shall be given absolutely to my said cousins, Annie Kelley and Mary Kelley, share and share alike, or to the survivor, unless either of them shall have died leaving descendants them surviving, in which event such descendants shall take the share the parent would have taken, if living, sharing the same per stirpe.
In construing this will consideration should also he given to article sixteenth which states: ‘ ‘ The provisions hereinbefore expressed for the benefit of my said wife, Marrietta Maloney are in lieu of dower.” It should be remembered that dower was abolished as to realty acquired after August 31, 1930, but not as to that acquired prior to September 1, 1930. (Real Property Law, § 190.)
It should also be noted that Anna (Annie) Kelly and Mary Kelly, in prior articles were each given the sums of $1,000 outright; and that the widow was given $1,000, deceased’s automobile, clothing, household effects and furniture outright, in addition to the trust provisions for her in article twelfth.
*100 Attorneys for all parties appearing are agreed that the foregoing trust provisions unlawfully suspend the power of alienation and ownership of the trust corpus in violation of section 11 of the Personal Property Law, and section 42 of the Beal Property Law.
The attorneys for the nephew John Harris Maloney claim that the interests of the children of Anna and Mary Kelly are wholly contingent and neither vested nor vested subject to being-divested ; that the remainders to them cannot be accelerated; that the property must, therefore, be distributed as in intestacy; and that the widow’s estate is precluded from sharing in decedent’s real estate because of paragraph sixteenth of the will. This real estate, consisting of two parcels, one acquired before September 1, 1930, and the other after that date, however, amounts to but a small fraction of the value of the trust corpus.
Counsel for the widow’s estate agrees that the remainders provided by the will are contingent and therefore cannot be accelerated,- claims there is but a single inseparable trust, and urges intestate distribution, but disagrees as to being excluded of any interest in the real property.
Both counsel for the cousins Kelly children claim that the Kellys have an indefensibly vested remainder subject to open, and that the intent of the will should be carried out by excising the invalid parts and accelerating the remainders to the Kelly children. Counsel for Margaret M. Bubery, one of the Kelly children also urges that the testator intended to create separate trusts for John Harris Maloney and Daniel Maloney rather than one trust; that the remainders of the Daniel Maloney trust should be accelerated and distribution should be made accordingly; that the other trust be continued for John Harris Maloney, and upon his death distributed to the Kelly children.
The questions thus presented in brief are as follows:
1. What was the testator’s real intent drawn from the * ‘ four corners of the will ”?
2. Were the remainders vested, vested subject to being divested, vested subject to open, or contingent?
3. Can any portion of the invalid trust provision be excised so as to carry out the real intent of the testator legally?
4. If the excision, cannot be made, should the property be distributed as in intestacy?
5. If distributed as in intestacy, could article sixteenth be construed to mean in lieu of any further interest in decedent’s *101 estate rather than in lieu of dower only, the widow already having had everything given to her under the will?
6. If distributed as in intestacy and not construed as in No. 5 herein, should the widow be deprived of any interest in the real property, pursuant to article sixteenth of the will?
Courts universally have held that the testator’s intention as expressed in the 1 ‘ four corners of the will ’ ’ should be faithfully carried out if ascertainable and if legally possible. The Court of Appeals in Matter of Hitchcock (222 N. Y. 57, 73) has stated this rule as follows: ‘ ‘ The principle is now well settled that the courts lean in favor of the preservation of such valid parts of a will as can be separated from those that are invalid without defeating the general intent of the testator ” (and cases cited).
In the instant case this could very easily be done by excising the provisions for Daniel Maloney as if he had never lived. He, having died intestate before the widow and his distributee being the nephew, is now deprived of nothing under such a plan as all he stood to take by the will was the life use of one half the trust after the widow’s death. Having had no children, the provision for a remainder over to his children under certain contingencies would lapse. Under such a possibility the only question involved would be whether it is legal. All other questions would then become academic. But alas, I am afraid this is not legal.
In answering question No. 1, as to what was testator’s real intent, it is obvious the testator’s primary consideration was his wife. He not only gave her the life use of the substantial trust corpus but prior to that he had given her his auto, clothing, personal effects, household furniture, and furnishings and $1,000 in cash which he directed to be paid as soon as possible after issuance of letters testamentary. But, obviously, he did not want the bulk of his fortune to go to her family by a prior marriage. In support of this, note he provided small legacies to two of his stepdaughters and an educational trust to the son of one of the stepdaughters together with a gift of a diamond ring. Beyond that he did not want anything to go to his wife’s family.
His next considerations were for his nephew John Harris Maloney and his brother, Daniel Maloney. Although he names the nephew first, he directs that the trust for the nephew and the brother shall be a trust measured by the life of the one living the longest. All counsel are agreed that this provision is bad as unlawfully suspending the power of alienation and *102 if it were held to be one trust, the court would so find, no citation being necessary. He then directs that should the nephew predecease the brother leaving no children him surviving, excluding adopted children, that one half of the trust income which would have been paid to the nephew shall be paid to hi's cousins, Annie Kelly and Mary Kelly and if either shall not be surviving at the time such income payments accrue or die in the interim leaving descendants surviving such descendants shall take such payments. This is a further violation of the rule of perpetuities. He also provides that if his brother predecease the nephew, all of the income from the brother’s trust fund shall go to the nephew. He evidently thought that the nephew’s needs were greater than the brother’s. At the death of the longer surviving of the brother or nephew the corpus was to go to the children of the nephew, excluding adopted children, per stirpes.
Then in article fifteenth, in the event of there being no children or descendants of the nephew at the time of the death of the brother or nephew that survive the one who lives longer, the corpus of the trust fund shall go to his two Kelly cousins or the survivor, or if deceased, leaving descendants, to the descendants per stirpes. It is obvious from all the foregoing that the Kellys and their descendants were not of primary or even of secondary consideration. They were entirely subordinated to the interests of the nephew and his descendants, if any.
Thus, the scheme and intent and dominant purpose of the testator was to first provide for his wife, then for his nephew and his brother, and then for his nephew’s descendants. And it is crystal clear that if possible, he wanted to keep his fortune in the nearest member of the Maloney family rather than the cousin Kelly branch of the family and of course, also to exclude any adopted children. The cousins were to share only in case the nephew, John Harris Maloney, died without children or descendants of his blood him surviving.
Judge Cbane, writing for the Court of Appeals in Matter of Durand (250 N. Y. 45, 53-54) keenly observes: “ The citation of authorities is of very little use in cases of this kind upon the fundamental principles of the law of wills. All the authorities cited are a mere repetition of these rules. The difference in the opinions is in their application to varying facts. What constitutes a suspension of the power of alienation is to be determined by the facts. The law if plain (Matter of Chittick, 243 N. Y. 304.) That we must consider in determining the application of section 11 of the Personal Property Law, not *103 what the actual conditions now are, hut what may happen, is well established. (Matter of Mount, 185 N. Y. 162.) If the dominant purpose is the creation of a single trust to continue during more than two minorities, absolute ownership is illegally suspended and the trust in its entirety is void, even though in some contingencies it may end within the statutory term. (Matter of Horner, 237 N. Y. 489.) In some instances it has been possible to disregard that portion of the will which rendered the trusts illegal, and preserve the rest. (Matter of Trevor, 239 N. Y. 6; Matter of Horner, supra.) These cases express no new rule, but merely apply long-standing and well-recognized rules to new facts. The dominant, underlying principle in all these cases is to carry out as far as possible within the meaning of the statute, the intention of the testator. If we can read into a will an intention to preserve any part of it, even with the illegal portions stricken out, the court will do so. In such a case we try to determine whether the maker of the will would have created the trust if all his express purposes could not be accomplished. This is not strictly law; it is a matter of good judgment, the judgment of men who according to our judicial system must in the last analysis determine the question. In declaring a testator’s intention, however, the courts are limited to the words which the testator, himself, has used in his will.”
Whether it should have been determined that the will unlawfully suspends the power of alienation immediately after the testator’s death has now become academic, because the widow had the entire benefit of the trust set up for her during the nearly 20 years preceding her death last October. We must, therefore, look to see whether or not we can excise any portion of the invalid parts and ‘ ‘ carry out as far as possible within the meaning of the statute, the intention of the testator.”
In Matter of Trevor (239 N. Y. 6) the Court of Appeals found separate trusts were created, invoked the doctrine of separable limitations and eliminated invalid parts by excision. There the testator had created a trust of one third of his residuary estate for the benefit of his widow for her life and at her death directed that this property be added to the trust shares created for four children in another part of the will; to apply the income of a share to the support of each child during minority and thereafter to pay over the principal in installments; but if any child should die leaving issue before becoming entitled to his share, to pay over his share to his issue; if any child should die without issue before receiving possession of his share, the testator directed that his share should be added to the shares of the *104 surviving child or children. Judge Pound reasoned (p. 17) that: ‘ ‘ His primary purpose is that if the children of his widow live to become entitled to possession of their shares under his will, ownership shall vest in them; if they die leaving issue before becoming entitled thereto, the ownership shall vest in their issue. His secondary, separable and alternative purpose is that if any of them die without issue before receiving possession of their shares, such shares shall go to the surviving children. The trust for the benefit of the children and their issue may be treated as an entirety; the contingent trust for the benefit of the surviving children in the case of the death of a child without issue as another entirety.”
Although the testator, John Maloney, throughout articles twelfth through fifteenth refers to the trust originally set up for the widow in article twelfth, when applied to the nephew and his children and to testator’s brother as “ the trust” or “said trust fund”, he actually treats “said trust fund ’ ’ as two distinct trusts, one being for the nephew and his children, if any, and the other being for his brother and the children of the nephew. In the first paragraph of article thirteenth the testator indicates this by the words ‘ ‘ in equal shares.”
That he intended to so separate the widow’s trust fund into two distinct and separate trusts is further indicated by the second and third paragraphs of article thirteenth of the will in which he directs separate treatment of the nephew’s one-half of the income from said trust during the life of the brother in case the nephew predecease the brother, and in the fourth paragraph thereof he directs still further separate treatment of the trust for the brother. (Matter of Horner, 237 N. Y. 489; Matter of Colegrove, 221 N. Y. 455; Matter of Trevor, 239 N. Y. 6.) The fund was to be held “ in solido ” for convenience of administration only. (Matter of Crakow, 177 Misc. 1034.) The trust is therefore separable.
Viewed in this light, the nephew’s trust is legally measured by the life of the widow and the nephew with remainder over to the nephew’s children if any, etc., in accordance with the provisions of the will.
Counsel for the Kelly children urge that such remainder to the unborn children further suspends the power of alienation. The measurement, however, is not the lives of such children as urged, but the' two lives only of the widow and the nephew. There is no suspension beyond such two lives. The trust to the nephew consequently being valid, the remainder over to his children is good if he has such children, and if no children, *105 then to the Kelly cousins. (Matter of Johnson, 233 App. Div. 587; Matter of Wilcox, 194 N. Y. 288.)
To eliminate the intervening trust to the nephew and accelerate the remainders of the Kellys, as was done in Kalish v. Kalish (166 N. Y. 368, 375) would also be giving absolute ownership to the Kellys who were to take, at, most, only a defeasible ownership under the will as written. This was held to be bad, in Matter of Durand (250 N. Y. 45, 55).
The intent and dominant purpose of the testator’s testamentary plan or scheme is here best served by such separation. And the doctrine of separability being here adopted, the nephew’s trust is, therefore, valid, as well as the remainders therein created.
What, then becomes of the brother’s trust? Assuming it fails, can it be accelerated? The rule, clearly set forth in Matter of Durand {supra, p. 55) is that: “ The law does not accelerate remainders except in favor of the same persons who would take them if the intermediate estate, expunged as illegal, had been allowed to run its course.” Although counsel for the Kelly descendants argue to the contrary, it is clear they cannot qualify under this rule. Because of the possibility of the nephew having children, and such possibility still exists, such possible children and not the Kelly descendants would take the intermediate estate.
It was strongly urged by counsel for the Kelly descendants that the Kellys had a vested remainder subject to open. With this, we cannot agree. There is some reasoning for its being a remainder vested defeasibly, but it seems like a clear contingent remainder. Painful as it may be and reluctant as I am, intestacy as to that must be invoked. (Matter of Durand, 250 N. Y. 45; Matter of Wilcox, 194 N. Y. 288; Matter of Silsby, 229 N. Y. 396.) As to the brother’s trust the harsh rule of perpetuities thus ruins the very obviously expressed intention and wishes of the testator.
Article sixteenth of the will says that the provisions for the widow were to be accepted by her in lieu of dower. There were two parcels of real estate in this trust, one acquired before September 1, 1930, and the other acquired after that time.
With regret we must hold that the will having been drawn by an experienced lawyer some two and one-half years after the abolition of dower, article sixteenth is not in lieu of all other rights in the estate. This seems exceedingly unjust and a further sad commentary on the harsh New York rule of perpetuities when measured by the fact the widow has already had more than her intestate share and the testator did not want his property distributed that way. But the court considers Clark v. Cammann (160 N. Y. 315) decisive as to this situation.
*106 Whether these or either of these parcels of real estate should be placed in the nephew’s trust or the brother’s trust is purely a matter of conjecture. But, in all fairness, the widow’s estate certainly should not have any portion of the small parcel of real estate acquired before September 1, 1930, even though there is sufficient personal property to set up the brother’s trust without that. Under subdivision 4 of section 83 of the Decedent Estate Law the widow’s estate therefore becomes entitled to $10,000 and one half of the residue of the brother’s trust except for the parcel of real estate acquired before September 1, 1930, and the nephew is entitled to that parcel of real estate plus the other one half of the trust fund for the brother.
Submit decree on notice, at which time application for allowances may be heard.